## In re MORRIS & CUMMINGS DREDGING CO.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—CONSTRUCTION.

　　A contract by a city for dredging recited that it was "for dredging about 50,000 cubic yards," and provided that no claim for extra or additional work or materials should be made or allowed unless, before the performance of such extra or additional work, the commissioner should have first authorized the same in writing, and, further, that "the aggregate price to be paid for extra or additional work or materials shall not exceed 5 per cent. of the contract price or total cost of the work and materials"; also that the contract should not be binding unless the comptroller should indorse thereon his certificate that there remained unexpended and unapplied a balance of the appropriation or fund applicable thereto sufficient to pay the estimated expense of executing the contract. The proposals, specifications, and the bid were all made part of the contract. The proposals were entitled "Proposals for Bids or Estimates for Dredging about 50,000 Cubic Yards," etc., and paragraph 13 provided that "the estimated quantities are given only to form a basis of comparison of bids, and are not guarantied to be accurate, and are not to be considered as a binding feature of the contract." The bid stated that it was for dredging "about 50,000 cubic yards," etc. The specifications provided that the contract would terminate on a certain date, "unless the estimated amount of dredging called for has been completed previous to this date, when it will terminate at the time the amount dredged in cubic yards is as near the estimated amount of the contract (i. e., 50,000 cubic yards) as it is practicable to order the work." Held, that the contract, by the repeated use of the phrase "about 50,000 cubic yards" and the provisions for an additional 5 per cent., fixed by its own terms a limit of the amount of work to be done (i. e., 52,500 cubic yards), beyond which lawful payment could not be made.

2. MANDAMUS—PAYMENT OF CLAIM AGAINST CITY—CONTRACT FOR PUBLIC IMPROVEMENT.

　　Such contract did not make the certificate of the engineer final and conclusive as to the legal interpretation of the terms thereof, but only as to the quantity of excavation done, so that mandamus would not lie against

the comptroller to compel payment of a balance alleged to be due for dredging in excess of 52,500 cubic yards.

Appeal from Special Term.

Application by the Morris & Cummings Dredging Company for a peremptory writ of mandamus. From an order denying the writ, the company appeals. Affirmed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Armstrong, Brown & Bowland (Pierre M. Brown, of counsel), for appellant.

William B. Ellison, Corp. Counsel (Theodore Connoly, Arthur Sweeney, and John F. O'Brien, on the brief), for respondent.

CLARKE, J.   This is an appeal from an order of the Special Term denying a writ of peremptory mandamus requiring the comptroller to pay the balance alleged to be due to the plaintiff from the city upon a contract for dredging. This contract was let after public advertisement and competitive bidding. By the provisions thereof the proposals, the specifications, and the bid were all made part of the contract. The proposals are entitled "Proposals for Bids or Estimates, Bid or Estimate, Bond, Contract, and Specifications for Dredging about 50,000 Cubic Yards in the North, East, and Harlem Rivers, in the Borough of Manhattan." Paragraph 13 provides that:

"The estimated quantities are given only to form a basis of comparison of the bids, and are not guarantied to be accurate, and are not to be considered as a binding feature of this contract."

The bid stated that it was "for dredging about 50,000 cubic yards," etc.   The contract was "for dredging about 50,000 cubic yards," etc., and provided, inter alia, that no claim for extra or additional work or materials should be made or allowed to the contractor unless, before the performance of such extra or additional work, the commissioner should have first authorized the same in writing, and, further, that:

"The aggregate price to be paid for extra or additional work or materials so authorized or ordered shall not exceed 5 per cent. of the contract price or total cost of the work and materials."

Also that:

"This contract shall not be binding or of any force unless the comptroller of the city shall indorse hereon his certificate that there remains unexpended and unapplied, as provided by the Greater New York charter, a balance of the appropriation or fund applicable thereto sufficient to pay the estimated expense of executing this contract as certified by the officer making the same."

Upon the contract appears the certificate of the commissioner of docks that the estimated expense of the execution of the contract would approximate the sum of $49,500 and the certificate of the comptroller that there remains unapplied and unexpended a balance of the fund applicable to this contract sufficient to execute the same, viz., $49,500.   It appears that that amount was arrived at by multiplying 50,000 estimated cubic yards by 99 cents, the price bid.   The specifications provided that the work to be done was the dredging in such

slips, or in portions of such slips, or in the bulkhead wall areas, as should from time to time be directed by the engineer, and that:

"This contract will terminate on the 31st day of December, 1905, unless the estimated amount of dredging called for in the contract has been completed previous to this date, when it will terminate at the time the amount dredged in cubic yards is as near the estimated amount in the contract (i. e., 50,000 cubic yards) as it is practicable to order the work."

The petition sets forth that the company has actually dredged 59,391 cubic yards, which, at the contract price of 99 cents per cubic yard, amounted to $58,979.09. It appears that there is no dispute as to the amount of the dredging actually done by the contractor. The claim of the city is that it is clear from the language of the contract that inasmuch as this dredging was not to be at one particular place or for one particular job, but was to be done here and there as the exigencies of the harbor might require and the engineer of the dock department might direct, the repeated language of "about 50,000 cubic yards" fixed that amount, with the addition of 5 per cent. thereon set forth in the paragraph of the contract in regard to extra work, so that the sum total provided for was at the most 52,500 cubic yards. As to payment for this amount there is no dispute.

The provisions of law in regard to the letting of contracts for public work are precise and definite, as we have recently had occasion to point out in the two recent cases of Gage v. City, 110 App. Div. 403, 97 N. Y. Supp. 157, and Cahn v. Metz, 101 N. Y. Supp. 392, and are to be observed in letter and spirit. The appellant claims, as I understand it, that there is no limit to the amount of work which may be done under this contract, and for which, having done, he would be entitled to payment by the city. It says the phrase "about 50,000 cubic yards" means any amount which the engineer might certify to as having been done. If this is so, there would be nothing to prevent bids being advertised for a comparatively small amount of work, the size of which would not induce bidders to enter into competition, as the prospective remuneration might not justify the collection of the necessary plant, materials, and men. Thereupon an award might be given at an extravagant price for a small amount of work, which thereafter might be enormously enlarged. Such an interpretation does not seem reasonable, and, while the very nature of the kind of work contracted for prevents that accuracy of description which is possible in, say, a building operation, yet nevertheless the contract itself, by the repeated use of the phrase about 50,000 cubic yards and the provision for an additional 5 per cent., seems to fix by its own terms a limit beyond which lawful payment could not be made.

Nor is the proceeding by writ of mandamus the proper way to determine the question here involved. The appellant claims that inasmuch as it has obtained the certificate of the engineer as to the amount of dredging done, and as the contract makes his certificate final and conclusive, it has an absolute right to payment by the comptroller. The answer to that is that the contract does not make the certificate of the engineer final and conclusive as to the legal interpretation of the terms thereof. In the absence of fraud, or mistake sufficient to constitute constructive fraud, the certificate of the engineer is final

and conclusive so far as the quantity of excavation done; but whether that amount is under the terms of the contract is a question for the court, and not for the engineer, and therefore the proceeding is not well brought. The petitioner should be remitted to its action, in order that it may establish therein the validity of its claim against the city, if it can.

The order appealed from should be affirmed, with costs and disbursements.

PATTERSON, LAUGHLIN, and SCOTT, JJ., concur.

INGRAHAM, J. I concur with Mr. Justice CLARKE upon the ground that a proceeding by mandamus is not the proper remedy, but that the petitioner should be remitted to an action at law to establish his claim, if any, against the defendant.