(64 Misc. Rep. 471.)

### DONLON CONTRACTING CO. v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Kings County.    September, 1909.)

MUNICIPAL CORPORATIONS (§ 254*)—CONTRACTS—LIMITING AMOUNT OF LIABILITY.

Greater New York Charter (Laws 1901, p. 50, c. 466) § 149, requires the borough president to certify the estimated expense of executing contracts to the comptroller, and thereby limits the expenditures under a contract for removing refuse from the sewers of Brooklyn to the amount of such estimated expense, and where the amount of refuse exceeds the estimated quantity, the contractor has no claim against the city for its removal, though removed by him under a written order of the borough president.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 254.*]

Action by the Donlon Contracting Company against the City of New York.    Verdict for plaintiff.    Motion for new trial granted, unless plaintiff stipulates to reduce its recovery.

W. E. Benjamin, for plaintiff.

P. Percy Chittenden and Frank Martin, for defendant.

MADDOX, J.    The proofs adduced on the trial of this case clearly justified the conclusion that plaintiff removed, within the calendar year fixed by the contract, from the brick sewers in the borough of Brooklyn, and disposed of, approximately 60,238 **cubic** yards of silt, sand deposits, and refuse; and the value of that work, at $1.22 per cubic yard is $73,490.36, of which plaintiff has been paid $32,621.10, leaving a balance of $40,869.26, the verdict as returned by the jury.    Defendant moves for a new trial upon the ground that the contract here in question is limited to the amount certified by the comptroller as remaining "unexpended and unapplied" of the fund applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same.    Greater New York Charter (Laws 1901, p. 50, c. 466) § 149.

The board of estimate and apportionment, approving of and concurring in a resolution therefor adopted by the board of aldermen by a resolution authorized the raising of a fund of $100,000 by the issuance and sale of special revenue bonds, "to be used by the borough president of the borough of Brooklyn for cleaning and maintaining in a proper condition the sewers in" said borough.    There is no evidence of the use of any part of said fund, other than the $36,600 certified by the comptroller as applicable to the contract here under consideration; nor is there any evidence of any greater amount having been raised by the issuance and sale of any of the bonds authorized by said resolution.    The then borough president of Brooklyn, having no authority

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to contract for the city except after public letting, unless the amount of the contract was less than $1,000, thereafter advertised for bids for the cleaning of the brick sewers in that borough; and by that invitation for bids and the plaintiff's bid the work contemplated was "furnishing all labor and materials for removing the silt or sand deposits or refuse of a kindred nature from" such brick sewers, and such was, likewise, the subject-matter and purpose of the contract thereafter entered into. The invitation for bids contained, among other things, the following provisions:

"(13) The estimated quantities are given only to form a basis of comparison of bids, and are not guaranteed to be accurate, and are not to be considered a binding feature of this contract. * * *

"(14) The items for which prices will be named, and upon the sum total of which the comparison of bids will be made, are as follows: Thirty thousand (30,000) cubic yards of silt deposit."

Further (paragraph 9a), that:

"Bidders are particularly requested to examine the specifications * * * before bidding" and "expressly notified that no deviation from the specifications will be allowed. Bidders shall not, at any time after submission of a bid, * * * dispute or complain of the amount * * * of work to be performed, * * * or assert * * * any misunderstanding in regard to * * * amount of work to be done."

The provision that the "estimated quantities" were not to be deemed accurate, not a binding feature of the contract to be entered into, and were for comparison only, was a matter of precaution. It was tentative, since the amount of work to be done, its volume, and cost must await determination until the bids were in, the contract awarded and ready for execution, and the borough president enabled to certify to the comptroller "the estimated expense of executing such contract," whereupon the comptroller's certificate was to be indorsed thereon; and plaintiff might well have declined to execute such contract until said comptroller's certificate showing that there remained, "unexpended and unapplied, * * * of the fund applicable thereto, sufficient to pay the estimated expense" thereof, had been so indorsed.

Plaintiff's bid was $1.22 per cubic yard of the materials so removed "and permanently disposed of," and that bid contained the declaration by the plaintiff that:

"(5) We have examined the contract (including specifications) for the * * * work in the form approved by the corporation counsel, and we will contract, in the form so approved, to do all the work and provide all, furnish * * * all the labor * * * mentioned and described in said contract and specifications" for the sum so bid.

At the cost per cubic yard bid by the plaintiff we find that the total for 30,000 cubic yards would be $36,600, the amount certified by said borough president as the "estimated cost of the work * * * required by the * * * contract" in question, and is, we see, the same amount as that certified by the comptroller as remaining "unapplied and unexpended * * * of the fund * * * applicable to this contract, sufficient to pay the estimated expense of executing the same, viz., $36,000"; that is, sufficient to pay "the estimated cost of the work" as so certified by said borough president.

The comptroller's certificate was an essential to the validity of the contract. It was an absolute prerequisite to any liability on the part of the defendant under that contract, which, in the absence of such certificate, would not be "binding or of any force" against the defendant. Greater New York Charter, § 149; Beckwith v. City of New York, 121 App. Div. 462, 464, 106 N. Y. Supp. 175. That certificate was dependent upon, and to be made, of necessity, subsequent to, the certificate of the contracting officer, the borough president in this instance, giving the estimated cost of the work; for by the charter (section 149) it is provided that the amount so certified shall be sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same. If the amount remaining "unexpended and unapplied" be insufficient, then there can be no certificate. That charter provision makes for the security of the contractor, and, as well, for the safeguarding of the public interest.

Referring to the specifications which, together with the invitation for bids and plaintiff's bid, are expressly made a part of the contract (see paragraph "b"), we find, among other things, this significant provision:

"(18) The contractor shall remove the deposit from the sewers, so that they shall be brick clean, provided the amount of the material to be removed represented by money is found to be not greater than the amount in money certified by the comptroller as available for this contract."

Now the only money "available for this contract" is that balance which the comptroller has so certified as remaining "unapplied and unexpended * * * of the fund * * * applicable to this contract," and the "money * * * available," so referred to in the specifications, is the amount so certified by the comptroller as aforesaid. By paragraph "f" of the contract it is provided, as authorized by section 419 of the charter, that no claim for extra work shall be made or allowed, unless done under a written order of the borough president, and then not to exceed 5 per cent. of the contract price or total cost of the work. Plaintiff's witness testified that plaintiff was stopped in the doing of the work, and that the chief engineer then told him he had no right to exceed the 30,000 yards; but thereafter, and pursuant to the written order of the then borough president, that plaintiff resumed the work and continued the same until stopped by the superintendent of sewers of the borough of Brooklyn, up to which time it had removed the 60,238 cubic yards of sewer refuse before stated.

From the foregoing considerations it is plain, and we must conclude, that under the contract here the refuse was limited in quantity; that it should not exceed that total of cubic yards which, at $1.22 per cubic yard, would amount to the sum certified by the comptroller as available for the work, and, in addition thereto, 5 per cent. of the sum so certified for extra work. Matter of Morris & Cumings Dredging Co. v. City of New York, 116 App. Div. 257, 101 N. Y. Supp. 726, approved and adopted in Morris & Cumings Dredging Co. v. City of New York (in memorandum decision of the Court of Appeals, December 15, 1908) 193 N. Y. 678, 87 N. E. 1123. The borough president, having authority to provide for extra work, but not exceeding 5

per cent. of the amount of said contract, and having incorporated such provision therein, plaintiff can now avail itself of his written order to that extent and consider so much of the work done thereunder as extra work.

Motion for new trial is granted, unless plaintiff shall stipulate to reduce its recovery to $5,608.07, with interest thereon from February 10, 1906, and the cost of this action, in which event the motion is denied.

If plaintiff, feeling aggrieved at this disposition of the motion, desires to appeal therefrom, let there be a stay of execution pending the final determination of such appeal.

Plaintiff has done all the work above stated, and has earned the contract value thereof, of which there now remains unpaid $40,869.26. The defendant has had and now has the benefit of that work; and plaintiff, morally and equitably, though not legally, is entitled to its due, namely, the sum last above stated, less, however, the $5,608.07 above referred to, if paid to it by the defendant. Plaintiff should be paid; and the defendant, through its board of estimate and apportionment, now has authority, under chapter 601, p. 1397, of the Laws of 1907, to adjust and pay such claim, it appearing "that the city has received a benefit and is justly and equitably obligated" therefor; and to that board application should be made for such relief.

Ordered accordingly.