LYNCH v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. COMMISSIONER OF STREET IMPROVEMENTS—ACCEPTANCE OF BID—LIABILITY OF CITY.
     Laws 1890, c. 545, § 1, provides that a commissioner of street improvements for the Twenty-Third and Twenty-Fourth wards of the city of New York shall be subject to the powers and limitations prescribed for the heads of departments in that city. Consolidation Act, § 64, provides that contracts for city work shall be entered into by appropriate heads of departments, and shall be founded on sealed bids; that, if the head of the department shall not deem it for the interest of the city to reject all bids, he shall, without the approval of any other department or officer, award the contract to the lowest bidder; and section 65 provides that any bidder who fails within five days after notice of acceptance of his bid to execute a contract for the work shall forfeit the amount deposited with his bid. Held, that the award of a contract by the commissioner to the lowest bidder creates a binding contract on behalf of the city to subsequently execute a contract, for a breach of which the city is liable in damages to the bidder.

2. SAME—WAIVER BY BIDDER.
     A lowest bidder to whom a contract for work was awarded by the commissioner of street improvements did not, by accepting a return of the deposit made by him with his bid, after notice that his bid had been subsequently rejected, and after he had protested against reletting the work, and after the commissioner had readvertised the proposals for bids, waive his right to insist upon performance of the obligation created by the acceptance of his bid.

Action by Edward N. Lynch against the mayor, aldermen, and commonalty of the city of New York. There was a judgment for plaintiff, and a motion for a new trial on exceptions of defendant, which were ordered to be heard in the first instance at general term. Exceptions overruled, with directions.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

L. L. Kellogg, for plaintiff.

Edward H. Hawke, for defendant.

INGRAHAM, J.    This action is brought to recover damages sustained by the plaintiff in consequence of the refusal of the defendant to execute and sign a certain contract or agreement whereby the plaintiff was to perform certain work in the construction of a sewer in Franklin avenue from Third avenue to 167th street in the city of New York.    The commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards having advertised for bids for the construction of this sewer, the plaintiff made a bid, which was received by the commissioner, and the bid of plaintiff, with others, was opened as required by statute on the 24th day of February, 1892; and on the 26th day of February the plaintiff received a letter from the secretary of the commissioner of street improvements, by which the plaintiff was notified that: "Your proposal for constructing sewer in Franklin avenue from Third avenue to One Hundred and Sixty-Seventh street being the lowest, the contract for same has been awarded to you, and it will be necessary for your sureties to appear and qualify before the comptroller at his office;" and the said commissioner transmitted the plaintiff's bid to the comptroller of the city of New York.    The question is whether or not this action on the part of the commissioner of street improvements of itself created a binding contract between the city and the plaintiff for which the city was responsible in damages if the defendant refused to make the contract and complete the work.    It appeared that on March 30th—six days after the letter awarding the contract to the plaintiff had been sent— the commissioner notified the plaintiff by another letter that his proposal to build the sewer had been rejected on account of the irregularity of the bid, and subsequently the defendant refused to execute the contract with the plaintiff.    The statute under which the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards of the city of New York was appointed (chapter 545, Laws 1890) regulates the powers of such commissioner.    By section 1 it is provided that he shall be subject to the general provisions, powers, and limitations prescribed by law relating to the heads of departments and public officers of the city of New York.    And by section 2 of the said act it is provided that the said commissioner of street improvements shall have the exclusive right to construct and maintain all bridges, tunnels, sewers, streets, etc., and he is given all the rights, powers, duties, authority, and is made subject to the obligations in relation to the said streets, sewerage, and drainage which, prior to the passage of the act, were conferred upon, possessed, and exercised by the department of public parks of the city of New York.    By section 64 of the consolidation act it was provided that:

"Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose which work and job is to be undertaken or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than one thousand dollars, the same shall be by contract, under

such regulations concerning it as shall be established by ordinance of the common council, excepting such works now in progress as are authorized by law or ordinance to be done otherwise than by contract, and unless otherwise ordered by a vote of three fourths of the members elected to the common council; and all contracts shall be entered into by the appropriate heads of departments and shall, except as herein otherwise provided, be founded on sealed bids or proposals, made in compliance with public notice duly advertised. * * * If the head of the department shall not deem it for the interests of the city to reject all bids, he shall, without the consent, or approval of any other department or officer of the city government, award the contract to the lowest bidder, the terms of whose contract shall be settled by the counsel to the corporation as an act of preliminary specification to the bid or proposal, and who shall give security for the faithful performance of his contract in the manner prescribed and required by ordinance."

The question here is whether a notice by the head of a department to the lowest bidder that his proposal is the lowest, and that the contract has been awarded to him, precludes the head of a department, before the actual execution of the contract, from rejecting all the bids under the public notice which has been duly advertised. In other words, whether the award of a contract by the commissioner to the lowest bidder before any contract has been executed under it creates a binding contract on behalf of the city to subsequently execute the contract, for a breach of which the city is liable for damages. Let us look for a moment at the rights and obligations of each of the parties to this proposed contract, immediately after this communication awarding the contract to the plaintiff was received by him. The city, by its duly-authorized officer, had advertised for bids or proposals to do certain work that the city was authorized to do. Annexed to that proposal was a contract which had been settled by the counsel to the corporation as an act of preliminary specification to the bid or proposal. The plaintiff had made a bid offering to do the work for a price named, and it is not disputed that he was the lowest bidder. Whether or not the contract should be awarded to him was then to be determined by the commissioner. The statute imposed upon the commissioner a specific duty. That was, first, to determine whether or not it was for the interest of the city to reject all bids. If he determined not to reject all bids, he was then required, without the consent or approval of any other department or officer of the city government, to award the contract to the lowest bidder. ' Consolidation Act, § 64. Upon that award being made, the lowest bidder was bound to execute the contract, and to furnish sureties to secure the faithful performance of the contract, who, in addition to the justification and acknowledgment of the bond, should be approved by the comptroller. If the lowest bidder neglected or refused to accept the contract within five days after written notice that the same had been awarded to his bid or proposal, or if he accepted, but did not execute, the contract, and give the proper security, it should be readvertised or relet as above provided. See Consolidation Act, § 64. But, in addition to that, by section 65 of the consolidation act, it was provided that each bidder must deposit with the department or officer a certified check drawn to the order of the comptroller, or money to an amount not less than three

nor more than 5 per cent. of the amount of the bond required by the department or officer for the faithful performance of the work proposed to be done or supplies to be furnished; and, if the said lowest bidder shall refuse or neglect, within five days after due notice that the contract has been awarded, to execute the same, the amount of the deposit made by him shall be forfeited to and retained by the said city as liquidated damages for such neglect or refusal.   Thus we see a system provided by which work to be done is to be by contract to be entered into by the appropriate heads of departments, to be founded on sealed bids or proposals, made in compliance with public notice, duly advertised.   The head of a department, unless he shall deem it to be for the best interest of the city to reject all bids, shall, without the consent or approval of any other department or officer, award the work to the lowest bidder; and when this award is made, the lowest bidder is bound to execute the contract, or forfeit to the city a sum of money which he is required to deposit with the officer at the time of the submission ·of his bid.   Upon the determination by the head of the department that it is not for the interest of the city to reject all bids, he is bound to award the contract to the lowest bidder; and, when that award is made, it seems to be clearly the intention of the statute to bind both the lowest bidder and the city to sign the contract. The penalty for a violation of that obligation by the lowest bidder is fixed by the statute, namely, a forfeiting of the amount of money that the bidder was required to deposit at the time of the submission of his bid; and as no penalty is affixed for a refusal of the city to perform its part of the contract, namely, to execute the contract that had been settled by the corporation counsel as an act of preliminary specification to the bid, we think it follows that the city was liable for the damages sustained by the lowest bidder for the refusal to execute the contract.   This view, we think, is sustained by the case of People v. Campbell, 72 N. Y. 498, where Miller, J., in delivering the opinion of the court says:

"This position, we think, is well founded, and there appears to be no question that, if the proceedings were all regular, and conducted according to law, as is asserted, and the relator has in all respects conformed to the provisions of the city charter, that he has a right of action against the city for all damages which he has sustained by reason of the refusal of the commissioner to execute and carry out the contract."

See, also, the case of People v. Thompson, 99 N. Y. 641, 1 N. E. 542.

Reading sections 64 and 65 of the consolidation act together, it seems to be clear that it was the intention of the legislature to reserve the uncontrolled right to reject all bids to the head of the department having the work in charge.   Upon him rested the responsibility of determining whether or not it was for the interest of the city that all bids should be rejected.   But when it had been determined that it was not for the interest of the city to reject all bids, he was then bound to award the contract to the lowest bidder. The making of such an award was a determination that it was not for the interest of the city to reject the bids, and the right of the parties then became fixed.

The city was bound to execute the contract, and the lowest bidder was bound to execute his contract, and to furnish the security required by the statute. If he failed to perform that obligation, he forfeited the sum of money that had been deposited with the officer. If the city failed to perform and execute the contract, it became liable to the lowest bidder for the damages that he sustained in consequence of such violation. There is nothing in the statute to suggest an intention to leave this question as to whether bids should be rejected or not open, to be determined by the commissioner after the contract had been awarded. On the contrary, the express provision of the statute is that that question should be determined before the award, and, it having been determined by the commissioner, the rights of the parties became fixed.

The objection to the form of the verification by the proposed sureties is frivolous. He followed explicitly the directions upon the proposed bond, and, as each of the sureties was both a householder and freeholder, it would have been improper to strike out either of the words. No point is made but that the sureties were amply sufficient, and would have been approved by the comptroller but for the action of the commissioner in stating that he had rejected all the bids.

We do not think that the plaintiff, by accepting the return of his deposit, waived his right to insist upon the performance of this obligation by the city. It does not appear expressly when that money was returned to him, but the check returning it appears to have been paid February 9, 1893. That was after he had been notified by the commissioner that his bid had been rejected, and after he had written a letter to the commissioner protesting against the reletting of the work, and after the commissioner had readvertised the proposal for bids. The city had thus refused to perform its obligation to execute the contract, and there is nothing to require that the plaintiff's money should remain longer with the comptroller. Nor is there anything to show that the plaintiff neglected or refused to accept the contract within five days after written notice that the same had been awarded to his bid or proposal, or that he refused to execute the contract or give the proper security. The notice to the plaintiff that the contract had been awarded to him was dated February 26th. There is no evidence upon what date that letter was received by the plaintiff, but it must have been subsequent to February 26th, the day of its date. He had five days to accept the contract, and he testified that after he got this letter he went down to the comptroller's office with one of his sureties; and on March 3d the commissioner expressly repudiated his award of the contract, and rejected the plaintiff's bid, claiming it to have been irregular. We think there is no evidence to show that the plaintiff refused to execute the contract offering the requisite sureties as required by the statute.

The only other objection urged by the defendant is an exception to certain questions that were asked the plaintiff as to the value of the rock that was to be excavated by the plaintiff, and the objection is based upon the ground that it was inadmissible as showing what plaintiff had paid for rock. But there was no such question asked the plaintiff. To qualify him to testify as to the value of the rock,

he was asked whether he had purchased rock himself at this time, and then, basing his testimony upon the knowledge that he had acquired as to the market value of the rock, he was asked, "What was a fair market value for this rock?"   We do not think that this testimony was incompetent, or that there was anything that prevented the plaintiff from testifying as to what the rock was worth.

The verdict seems to have been amply sustained by the evidence, and we think the exceptions should be overruled, and judgment directed for the plaintiff upon the verdict, with costs.   All concur.