(121 App. Div. 462.)

### BECKWITH v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   October 4, 1907.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—CERTIFICATES.

New York City Charter, Laws 1901, p. 50, c. 466, § 149, provides that no contract, the expense of which is not to be paid by assessment, shall be binding unless the comptroller indorses thereon his certificate that there is a fund applicable thereto sufficient to pay the estimated expense of executing the same. Section 419, p. 186, provides that, if the head of a department shall not deem it for the interest of the city to reject all bids, he shall award the contract to the lowest bidder. *Held*, that where the head of a department, after awarding a contract to the lowest bidder, so that he no longer had power to reject all bids, refused to execute the contract, so that no contract was or could be presented to the comptroller for his certificate, section 149 had no application, and did not prevent recovery for the refusal to execute the contract, applicable to which there were sufficient funds.

2. DAMAGES—REFUSAL TO EXECUTE CONTRACT—PROSPECTIVE PROFITS.

Prospective profits lost, to be ascertained by deducting from the contract price what it would cost to execute the contract, are a proper element of damages for refusal of a city to execute a contract for work properly awarded to the lowest bidder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 70.]

3. SAME.

In arriving at the prospective profits lost, by reason of a city refusing to execute a contract to the lowest bidder for furnishing, delivering, and laying water mains in certain streets, among the items of cost of executing the contract, which are to be deducted from the contract price, are the cost of a bond, the expense of formulating the bid, and the cost of plans.

4. SAME—INTEREST ON UNLIQUIDATED DAMAGES.

Interest on the prospective profits is not recoverable as part of the damages for refusal to execute to the lowest bidder the contract for furnishing, delivering, and laying water mains in certain streets, as it cannot be said such profits were ascertainable by mere computation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 141.]

Appeal from Trial Term, Kings County.

Action by Clinton Beckwith against the city of New York. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, subject to remittitur.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Theodore Connoly (Francis Martin, on the brief), for appellant.

Edward M. Grout (James F. McKinney, on the brief), for respondent.

MILLER, J.   The appellant argues that this action, being for breach of contract, cannot be maintained, for the reason that no enforceable contract was made, and that it should have been brought for a failure to make a contract. The argument, to say the least, is not in-

genuous, for the complaint alleges the refusal of the defendant to execute a contract which had been awarded to the plaintiff upon competitive bidding after all of the requirements of the statute had been observed. The contract duly awarded as aforesaid was for furnishing, delivering, and laying water mains in certain streets in the borough of Richmond. After it had been duly awarded, and after the plaintiff's sureties had been approved, and after the plaintiff, upon notice to the chief engineer, had placed preliminary orders so as to be in position to execute his contract speedily, as he was required to do by its terms, the commissioner of water supply, gas, and electricity refused to execute the contract, and rejected all bids.

The appellant relies on the following provisions of section 149 of the charter (chapter 466, p. 50, Laws 1901), to wit:

"No contract hereafter made, the expense of the execution of which is not by law or ordinance, in whole or in part, to be paid by assessments upon the property benefited, shall be binding or of any force, unless the comptroller shall indorse thereon his certificate that there remains unexpended and unapplied, as herein provided, a balance of the appropriation or fund applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same."

Such certificate was never made, for the reason that the contract was never presented to the comptroller for his certificate; said commissioner having rejected the bids after awarding the contract as aforesaid. Section 419 of the charter contains the following provision:

"If a borough president or the head of a department shall not deem it for the interests of the city to reject all bids, he shall, without the consent or approval of any other department or officer of the city government, award the contract to the lowest bidder, unless the board of estimate and apportionment by a three-quarter vote of the whole board, shall determine that it is for the public interest that a bid other than the lowest should be accepted. * * *"

It is not claimed that the board of estimate and apportionment so determined, and it is plain that, having awarded the contract, the commissioner had no power to reject all bids. Pennell v. Mayor, 17 App. Div. 455, 45 N. Y. Supp. 229. The commissioner, however, could not be compelled by mandamus to execute the contract for the reason that the plaintiff had a remedy in the present action. People v. Campbell, 72 N. Y. 496. It can be no defense that the comptroller never did what he was prevented from doing by the breach complained of. The plaintiff proved, and it was not disputed, that there were funds, applicable thereto, sufficient to pay the estimated expense of executing the contract, and, but for said wrongful rejection of bids, the comptroller could have been compelled by mandamus to make the certificate in case of a refusal, for his duty was purely ministerial. This case is controlled by the decision in Lynch v. Mayor, 2 App. Div. 213, 37 N. Y. Supp. 798; for, while the appellant seeks to distinguish that case by asserting that the present statute materially differs from the statute in force when the contract involved in that case was awarded, a comparison of said section 149 of the charter and section 123 of the consolidation act (chapter 410, p. 31, Laws 1882) discloses that, so far as the question now under consideration is concerned, there is no

material difference between the two. Moreover, as we view it, the opinion of the court in Lynch v. Mayor correctly states the law applicable to this case, and, while the court in that case did not discuss said section 123 of the consolidation act, now superseded by said section 149 of the charter, they evidently deemed it, as we do, immaterial. Had the contract been executed, the provision quoted from said section 149 would apply, and said contract would have no binding force until the certificate was made.

The plaintiff was permitted to recover the sum of $30,231.09, the prospective profits which his proof showed were lost, and the sum of $2,052.50 for the following expenditures, to wit: Cost of pipe purchased, $975.50; the cost of two valves, $277; cost of bond, $350; expense of formulating bid, $150; and cost of plans, $300. The prospective profits lost were proper elements of damage under the leading case of Masterton v. Mayor, 7 Hill, 61, 42 Am. Dec. 38, which both sides rely upon. These profits were properly arrived at by deducting what it would cost to execute the contract from the contract price, and it may be conceded that the plaintiff could recover in addition to that any expense to which he was put and from which he could derive no benefit by reason of the defendant's breach, but it was not shown that the plaintiff would lose the cost of the pipe and valves. There was some evidence that the pipe had no value except for the iron, and that there was no market for the valves except in the city of New York, but there was not sufficient proof to show what either the pipe or the valves were worth. As to the other items of expense enumerated, supra, if allowable at all, they should have been included in the estimated cost of doing the work, but an examination of the evidence discloses that the prospective profits were arrived at without including said items of expense in the estimated cost of doing the work; hence, if allowed at all, they should be deducted from the prospective profits.

The plaintiff was also allowed interest from the date of filing the claim. This, we think, was improper, for the reason that the amount due was not capable of being ascertained by mere computation. While the rule that interest is not allowable on unliquidated demands has been somewhat modified, interest has only been allowed where the debtor, by reference to established market values, contract prices, or otherwise, could by mere computation ascertain the amount which he owed. See Gray v. Central R. R. Co. of New Jersey, 157 N. Y. 483, 52 N. E. 555; Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101; Excelsior Terra Cotta Co. v. Harde, 181 N. Y. 11, 73 N. E. 494, 106 Am. St. Rep. 493. The ascertainment of prospective profits on such a contract as the one involved here depends upon many elements other than established market values, and it cannot be said that such profits could have been ascertained by the defendant by mere computation. Upon the proof, the plaintiff was only entitled to recover as damages the sum of $30,231.09, and the extra allowance should be computed on that sum.

The judgment should be modified accordingly.

Judgment and order reversed and new trial granted, costs to abide the event, unless the plaintiff within 20 days stipulate to reduce the recovery to

the sum of $30,231.09, with a proportionate reduction of the extra allowance, in which event the judgment as reduced is affirmed, without costs. All concur.