BELMAR CONTRACTING COMPANY, INC., Claimant, *v.* THE STATE OF NEW YORK.

## Claim No. 15187.

(State of New York, Court of Claims, February, 1920.)

Contracts — state   highways — damages — judgments — Highway Law, § 130.

Under section 130 of the Highway Law an agreement for highway construction to be effective as a contract must define the rights and obligations of the parties, be approved, as to form, by the state comptroller as required by the State Finance Law and signed by the state commissioner of highways, and there can be no breach of the contract until after it has been so signed.

Where delay in the performance of a valid agreement between the parties who enter into such a contract resulted in damage for which the contractor might have asserted a valid claim against the state, such claim is waived by its acceptance of the situation at the end of the delay, and by its performance and acceptance of the fruits of the contract and any claim for damages founded upon the delay of the commissioner of high-ways in executing the formal contract must be dismissed.

Court of Claims, February, 1920.       [Vol. 110.

Claimant awarded judgment for the damages resulting from the interference and interruption of the state during the progress of the work by which the completion thereof was delayed for a period of three weeks.

CLAIM for damages for alleged breaches by the state of a contract for highway construction.

Ainsworth, Carlisle & Sullivan, for claimant.

Charles D. Newton, attorney-general (Henry P. Nevins and Edward M. Brown, deputy attorneys-general), for State of New York.

SMITH, J.   Claimant is a highway contractor and the claim is for damages for alleged breaches by the state of a contract for highway construction entered into between the claimant and the state.   The contract was for the construction of a section of a state highway one and seventeen one-hundredths miles in length entirely within the city of Hudson upon and over city streets. Under an arrangement with the city of Hudson, to which claimant was not a party and with which claimant had nothing to do, almost all of the moneys which were to be paid for the work to be done under the contract were to be furnished by the city of Hudson.   The claimant's total or gross sum bid for the performance of the work was $31,786.30, and the portion thereof to be furnished by the city was $30,400.   The contract, however, as above stated, was between the claimant and the state, which latter undertook by the terms of the contract to pay the contractor the entire cost of the work, the matter of the city's contribution to such cost being a matter of arrangement between the state highway commissioner and the officials of the city.   It seems that it was a policy of the highway department

of the state not to obligate the state to pay the cost of this improvement until such time as the city of Hudson should file with the state highway department a certificate of deposit certifying that the amount of the city's contribution toward the cost of the work had been made available.

However, without waiting for the filing of such certificate of deposit the highway commission advertised for bids for the performance of the work and on August 24, 1915, claimant submitted its bid, which proved to be the lowest bid at the public letting.

On August 25, 1915, the highway department by its secretary telegraphed claimant: " You were low bidder for Highway 5574. Make arrangements to execute contract at once," and on the same day confirmed the telegram by a letter, also under the hand of the secretary, addressed to claimant saying: " Confirming my telegram of today I beg to advise you that you were low bidder on the Hudson City-Columbia County Highway 5574 at the letting of August 24th. Will you kindly make arrangements to execute the contract agreement and report on this highway at once."

On September 1, 1915, claimant's president called at the highway department and signed and acknowledged the formal contract, which was dated August 31, 1915, and left with said department the contract together with surety company bonds, the form and sufficiency of which have not been questioned.

By virtue of the provisions of section 16 of the State Finance Law it was necessary before this contract could be executed by the state commissioner of highways, or become effective, that it be approved by the state comptroller. For the reason that the city of Hudson had not yet filed the certificate of deposit above referred to the state highway commissioner

delayed transmitting the contract to the comptroller for his approval until on or about September 14, 1915, on which date the contract was approved by the comptroller. At the time of the transmittal of the contract to the comptroller for his approval the commissioner wrote upon the contract the letters O. K. and his own initials E. D., for the purpose of indicating to the comptroller the approval of the contract by the commissioner of highways and his intention, if approved by the comptroller, to execute it.

The state highway commissioner, however, did not sign the contract until October 20, 1915, for the reason that it was not until that date that the city of Hudson filed with the highway department the certificate of deposit showing that the moneys to be contributed by it for this work had been made available.

On the same day, October 20, 1915, claimant was notified of the fact of such filing and of the signing of the contract by the commissioner of highways by a letter, which also stated, " work upon the same can be started at once by you after notice to the Division Engineer " and that " a copy of the contract will be sent you for your files as soon as the same can be prepared."

In the meantime and on or about September third or fourth, claimant's president called at the highway department and had a conversation with Mr. Morris, the secretary of the highway commission, whose authority to speak for the commission so far as he has done so has not been questioned, in the course of which conversation claimant's president, to use his words, "asked for my contract and told them I was ready to go to work * * * I asked Mr. Morris if I could not have the contract so as I could start at once; we didn't have very much time to allow to do

that work that season," to which Secretary Morris replied: " We will get it ready for you shortly; we will do the best we can for you but the city of Hudson is holding us up." The claimant's president asked, " How are they holding you up," to which Secretary Morris replied, " Why the money has not been appropriated, the city of Hudson's part." Claimant's president then complained that he had two plants and a force of men which he was holding for this job, that he had figured the work very low in order to get enough work for the full summer, to which Secretary Morris again replied: " We will do the best we can. I will let you know in a few days." On two subsequent occasions within a few days thereafter similar conversations were had between claimant's president and Secretary Morris.

After receiving the letter of October twentieth, notifying the claimant that the city of Hudson had deposited its moneys and that the contract had been signed by the commissioner of highways, claimant's president called at the highway department and in a conversation with Secretary Morris complained that it was " too late to start in with the job at that time because the city of Hudson would not stand for a street tearing up some of the streets during the winter." After some further conversation between the claimant's president and Secretary Morris the former was referred to a Mr. Wait, division engineer of the highway department in whose division the site of the work was located, and at a conference between claimant's president and the division engineer held within a few days after the above interview with Secretary Morris it was mutually agreed that the work should go over until the following spring. In conformity to this arrangement the work was not started until April, 1916, and was completed by claimant in December of

that year and was paid for by the state at contract prices.

It was established on the trial that had claimant commenced the performance of the work covered by the contract immediately after the contract had been approved by the comptroller on September 14, 1915, it would have been able to complete the work in a period of six weeks with the plant and force then at its command, and at a cost of $10,166.05 less than the cost of an uninterrupted and undelayed performance in 1916. This amount claimant seeks to recover from the state upon the theory that the construction contract became effective and in force upon its approval by the comptroller on September 14, 1915, without the signature thereto of the state commissioner of highways and that the delay of that officer in signing the same prevented the contractor from performing the contract in the year 1915 when he could have done so advantageously and constituted a breach of the contract.

The state contends that the contract was not in force nor in existence as a contract until the signing by the state commissioner of highways on the part of the state, and that until it was signed there could be and was no breach.

The contention of the state must be upheld. Neither the contractor nor the state intended or understood that the formal proposal and the latter's acceptance should or did constitute the contract under which the work was to be performed. Both well understood and intended that a formal contract was to be executed. The information for bidders attached to and referred to in claimant's proposal so provided and the proposal itself in terms so stated. The printed contract form which claimant executed on September 1, 1915, exhibited upon its face spaces provided for the signature

of the contractor and for the state commissioner of highways and also a form for the approval of the contract by the state comptroller as required by the provisions of section 16 of the State Finance Law.   In fact the words:

<blockquote>
" The People of the State of New York<br>
" By State Commissioner of Highways<br>
" By......................<br>
*Commissioner.*"
</blockquote>

which, when the signature of the commissioner was added, would constitute the signature of the state, appeared in the appropriate place for such signature. This contract form contained provisions not even suggested in the information for bidders or in the itemized proposal, some of which were included therein pursuant to the express command of statute.   Labor Law, §§ 3, 14.

The Highway Law, section 130, provides that contracts for highway construction should be " executed," after advertising, proposals and award and that the commission shall prescribe " the form of contract " and may include therein such matters as they may deem advantageous to the state.   The contract being thus required by statute to be executed had no valid existence as a binding contract until it was executed by the signature of the commissioner.   *Broadway Central R. R. Co.* v. *Brooklyn City R. R. Co.,* 32 Barb. 358.

That both parties understood claimant's proposal and the department's telegram and letter notifying it that it was low bidder and directing it to call and execute the contract as but preliminary negotiations is evidenced by their conduct.

Claimant assembled no plant or force at the site of the work nor, so far as the record shows, made any other preparation for the performance of the contract.

Understanding that the contract was not in force he called at the highway department asking for his contract so that he could commence the work and complaining that his plant and force were being held up because the contract had not been signed by the commissioner of highways. If the contract were then in force without the signature of the commissioner of highways claimant was not delayed or held up by the withholding of that signature and could, and no doubt would, had he so understood the situation, have proceeded with the work of assembling his plant and force preparatory to work upon the contract. The commissioner of highways believed and intended that the construction contract was not and could not be effective until he had affixed his signature thereto, which he withheld until the city of Hudson had made its moneys available. This understanding is as binding upon the parties as the formal contract which was eventually executed pursuant to the terms of which the work was performed and paid for. No other understanding or agreement was contemplated by either party and the court cannot now make one for them.

The Highway Law as we have seen requiring, and both parties here having contemplated and agreed, that the whole contract between them should be finally reduced to writing as the evidence of its terms, those terms embracing many details not even referred to in claimant's proposal and some of them as above stated being required by statute to be included therein, and the State Finance Law requiring the approval of the state comptroller, the execution of the formal contract in form as approved by the state comptroller was, necessary to define their rights and obligations and to make their agreement effective as a contract for the construction of the highway. Highway Law, § 130; *Kingsway Construction Co.* v. *Metropolitan Life Ins.*

*Co.,* 166 App. Div. 385; *Brauer* v. *Oceanic Steam Navigation Co.,* 77 id. 407; *Franke* v. *Hewitt,* 56 id. 497; State Finance Law, § 16.

This conclusion is not at variance with the authorities cited by the claimant. *Lynch* v. *City of New York,* 2 App. Div. 213; *Garfielde* v. *United States,* 93 U. S. 242; *Pratt* v. *Hudson River R. Co.,* 21 N. Y. 305; *Sanders* v. *Pottlitzer Bros. F. Co.,* 144 id. 209; *Diskin* v. *Herter,* 73 App. Div. 453.

Those were cases where after an offer and acceptance contemplating that the same would be followed by a formal written contract, one of the parties refused to enter into the written contract and to permit the other to perform the agreement and it was in those cases held that the offer and acceptance constituted a valid agreement, substantially an agreement to make the contract. Conceding, upon the authorities of the cases cited, that claimant's proposal, coupled with the notice that it was the low bidder and the invitation to call and execute the contract, constituted a valid and binding agreement to enter into the contract, that agreement has been fully performed by the execution of the formal contract, and that fact distinguishes this case from the cases cited by the claimant.

If prior to the execution upon both sides of the formal contract there was a valid agreement to enter into the contract, and if a delayed performance of that agreement resulted in damage to claimant for which he might have asserted a valid claim against the state, that claim was waived by the claimant by its acceptance of the situation at the end of the delay and by its performance of the written contract and acceptance of the fruits thereof. *New York State Construction Co.* v. *City of New York,* 163 App. Div. 227. The delay following the execution of the contract was the result of the suggestion of

claimant and the agreement of the parties, and, of course, claimant can have no recovery for the consequences thereof.

It follows that the claim so far as it is founded upon the delay of the commissioner of highways in executing the formal contract should be dismissed.

Claimant also claims damage resulting from the interference and interruption of the state while it was engaged in progressing the work of the contract during the summer of 1916. It appears from the evidence that on September 4, 1916, the state's engineer in charge of the work notified the claimant that it would have to stop work as the state was considering changing the type of the road from asphalt to concrete. Such change was the subject of negotiations between the state and the city of Hudson which covered a period of three weeks, as a result of which it was concluded not to change the type of the road from asphalt to concrete but to increase the foundation under the asphalt and proceed with the work otherwise as originally planned. While work under the contract did not cease entirely during this period of three weeks the work did not proceed efficiently or advantageously to the contractor. During that season labor was scarce and the claimant was obliged to keep his men at work at something or lose them, and so while it kept its men on the job, the work accomplished by them during that period was of a value to the contractor not to exceed one-half of what it would have been had the work been permitted to proceed without interruption. In addition to the labor item claimant was obliged to pay and did pay certain charges for demurrage on boats and cars for the reason that he was unable to unload their contents until informed by the state as to the conclusions reached in regard to the type of the road to be constructed. Another result

of this interruption was to delay the completion of the work for a period of three weeks. The amount of claimant's damage found to be the result of this delay is $1,337.25, and for this amount claimant should have judgment.

ACKERSON, P. J., concurs.

Judgment for claimant.