**NORTHEAST MISSISSIPPI
COMMUNITY COLLEGE
DISTRICT, Plaintiff,**

v.

**VANDERHEYDEN CONSTRUCTION
COMPANY, Defendant.**

Civ. A. No. EC 91–312–D–D.

United States District Court,
N.D. Mississippi, E.D.

Jan. 8, 1992.

Lester F. Sumners, Sumners Carter &
McMillin, New Albany, Miss., for plaintiff.

Nicholas B. Phillips, Iuka, Miss., Michael
Malski, Amory, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This action involves a public entity's attempt to rescind an award of contract work to the lowest bidder, after the next to lowest bidder protested. The suit was originally brought in the Chancery Court of Prentiss County, Mississippi. At defendant Vanderheyden's behest, it was removed to this court pursuant to 28 U.S.C. § 1441 *et seq.* Thereupon, an expedited hearing was conducted on November 26, 1991. Following a court-ordered briefing period of twenty days, a final hearing in the matter was convened by this court on December 30, 1991. Having reviewed and considered the pleadings, briefs, exhibits and statements of the named and interested parties, the court now renders its opinion.

### FACTS

The facts of the case are not in dispute and can be summarized as follows: Plaintiff Northeast Mississippi Community College District (Northeast) received a $2.5 million grant from the Mississippi Major Economic Impact Authority.[1] The money would be used by Northeast for construction of a new science and math building. On August 8, 1991, the college solicited sealed bids through public advertisement. The advertisement stated that "the Board of Trustees reserves the right to reject any and all bids."

A total of eight bids was received in response; each was opened and read publicly at the September 10, 1991 board meeting in the presence of representatives from each bidding company. According to the board's minutes, defendant Vanderheyden was the low bidder at $3,698,036.00, followed by AMCA International Construction Corp (AMCA), with a bid of $3,718,700.00. The minutes reflect that Vanderheyden's bid was accepted by the board subject to meeting all specifications.

After the board meeting had concluded, AMCA lodged a formal protest with Northeast over its award to Vanderheyden, claiming that Vanderheyden's bid had ignored Northeast's bidding instructions. Specifically, AMCA complained that Vanderheyden did not list certificate of respon-

1. The authority was created by MISS.CODE ANN. § 57–75–5(b) (1972).

sibility numbers for its subcontractors.[2] AMCA also claimed that Vanderheyden's bid failed to provide for the minimum requisite minority small business participation in accordance with Mississippi law.[3] On the basis of these objections, AMCA contended that it was the lowest responsive bidder; therefore, AMCA claimed the contract should have been awarded to it instead of Vanderheyden.

AMCA's registered protest of the Vanderheyden bid award prompted the board to conduct a special meeting on September 20, 1991. Representatives from AMCA and Vanderheyden also attended and participated in the board's discussion. At the end of the discussion, board member Thomas Keenum summarized the choices: the board could either "let stand the action taken at the September 10 meeting with regard to the bids or could rescind and readvertise." *See* plaintiff's exhibit 7, Minutes, Board of Trustees Meeting "SPECIAL," Northeast Mississippi Community College, September 20, 1991. On the advice of its attorney, the board, with some reluctance, chose to rescind the September 10 acceptance of the Vanderheyden bid, reject all bids, and readvertise.[4] Minutes Board of Trustees Meeting "SPECIAL," September 20, 1991. Any other course of

action, it feared, could expose the college trustees to legal liability.[5]

In the second round of bid advertising, plaintiff revised its bid instructions so that listing subcontractor certificate of responsibility numbers was no longer requested. Furthermore, plaintiff incorporated Mississippi statutory language into the revised bid instructions and specified that minority participation was a fifteen percent (15%) goal. *See* MISS.CODE ANN. § 57–75–21.[6] These two revisions effectively removed the grounds which AMCA offered as a basis for asserting objections to the Vanderheyden bid.

Nine bids were received in the new round of solicitation; they were opened at the October 29, 1991 board meeting in the same manner as before. This time, however, AMCA was declared the low bidder while Vanderheyden was attributed with the next to lowest bid price. The board, as stated in the minutes of that meeting, accepted AMCA's bid.

## CONCLUSIONS OF LAW

The major issue presently before the court is whether the Board of Trustees for Northeast Mississippi Community College could properly rescind its prior bid acceptance and in turn readvertise for bids on

---

**2.** The original bidding instructions state that failure to list the subcontractor certificate of responsibility number will be sufficient grounds to reject the proposal. The instructions in no way indicate that the rejection is automatic; the board is given a choice whether or not to reject. The board chose not to reject Vanderheyden's bid when the body adopted a motion accepting it.

**3.** Both the original and revised "Instructions to Bidders" provision on minority small business participation asks only that the contractor "agree to take all actions necessary" to insure that such concerns benefit through subcontract work. Neither bid instruction makes the allotment a true and absolute minority set-aside of a particular amount.

**4.** The minutes from the September 20, 1991 meeting state that Lester F. Sumners indicated that the situation was unfortunate and not something that the college wanted. The desire of the institution, he stated, was to get the building constructed.

**5.** At the November 26, 1991 hearing held before this court, Mr. Sumners, counsel for plaintiff, stated that the action to rescind was taken to avoid "exposing the college trustees to a lawsuit." He further remarked that the board would be satisfied with either Vanderheyden Construction Co. or AMCA performing the work. Plaintiff's counsel continued, saying, it is in anticipation of having to defend its choice to the losing bidder in a lawsuit that the plaintiff seeks "a declaration from the court who should get the job."

**6.** The revised 9–26–91 bid instructions read: "Bidder shall agree to take all action necessary and consistent with § 57–75–21 of the Act to ensure that minority small business concerns, as that term is defined under the Act benefit from the expenditure of the ($2,500,000) ... granted by the State Major Economic Impact Authority hereunder, with a *goal* of fifteen percent (15%) of the grant funds to be expended with minority small business concerns." (emphasis added).

the project.[7]  In other words, once the board accepted Vanderheyden's bid on September 10, 1991, could it thereafter reject all bids and direct that the project be readvertised?  Guided by the holding of the Louisiana Supreme Court in *Donahue v. Board of Levee Commissioners,* 413 So.2d 488, 490 (La.1982), it is the opinion of this court that a public entity cannot reject all bids and readvertise the project after it has already accepted the lowest responsible bidder.

■ The court recognizes that the board reserved the right to reject any and all bids at its discretion.  By the same token, however, the board did not have unlimited or infinite authority to reject bids.  *Canton Farm Equipment, Inc. v. Richardson,* 501 So.2d 1098, 1104 (Miss.1987).  A public body's option of rejecting any and all bids is available "only prior to the time that it accepts one of the bids it has received."  *Gurtler, Hebert & Co. v. Orleans Parish School Bd.,* 251 So.2d 51, 53 (La.App. 4th Cir.1971).  Therefore, the court is of the opinion that once the board chose to accept Vanderheyden's bid, the reserved right to reject any and all bids had not been exercised and it was no longer operative.  To hold otherwise would be contrary to the well-established principles of contract law and would permit the possibility of favoritism in public bidding, the very evil which the bidding process statutes were enacted to prevent.  *Donahue,* 413 So.2d at 492.  In *Donahue,* plaintiff submitted a bid to undertake a bridge demolition project.  The levee board on July 16, 1980, accepted Donahue's bid as the lowest.  However, at a later meeting held on August 20, 1980, "it adopted a resolution rejecting all bids and directing that the project be readvertised."  *Donahue,* 413 So.2d at 492.  The court concluded that "rejecting all bids ... on August 20, 1980 was improper and without legal effect."  *Id.*

While Mississippi law does not statutorily impose an obligation upon the board to accept any bid, if it accepts any bid at all,

the board should accept the lowest and best bid.  *Canton Farm Equipment, Inc. v. Richardson,* 501 So.2d 1098, 1104 (Miss. 1987); *see* MISS.CODE ANN. § 31–7–13(d).  Once the board accepted Vanderheyden's bid as the lowest during the September 10, 1991 meeting, the respective parties had entered a binding contract.  Simply put, the board had communicated its acceptance of Vanderheyden's offer and revocation was not possible.  When a bid has been accepted by the proper authorities, such acceptance cannot be revoked.  10 McQuillian, Municipal Corporations, § 29.71 at 343 (3rd ed. 1981).

While neither the Mississippi Supreme Court nor any federal court in this circuit has considered this question under precisely these facts, there is a well-established body of case law holding that upon award of a public contract a binding contract between the bidder and the awarding agency is established.  For example, in *City of Susanville v. Lee C. Hess Company,* 45 Cal.2d 684, 290 P.2d 520 (1955), the Supreme Court of California stated,

> It has long been decided in this and other states and in the courts of the United States that in the letting of contracts for the doing of public works where the legislative body or the administrative officer is required by statute to call for bids and must under competitive bidding conditions let the contract to the lowest responsible bidder, the making of the award gives rise to a contract between the public body or agent and the successful bidder....

*City of Susanville,* 290 P.2d at 526.  In *Gurtler, Hebert & Co.,* 251 So.2d at 53, 54, the Louisiana Court of Appeal stated,

> Even where the right to reject any and all bids is properly reserved, the bidding laws should not be evaded under color of rejection.  Although the court generally will not disturb an honest exercise of discretion, [judicial intervention is entirely appropriate to] prevent the arbitrary rejection of a bid when its effect is to

---

**7.** In addressing this issue, the court will also consider whether the acceptance of the Vander-

heyden bid was unconditional.

defeat the object to be attained by competition. McQuillian, Municipal Corporations, Vol. 10, Sec. 29.77, pgs. 438 to 439. To allow the board to readvertise under the present facts would, in the court's opinion, sanction arbitrary rejection and hence have the effect of opening the door to the possibility of favoritism in future public bidding.

*See In the Matter of Lord Electric Company, Inc. v. Litke,* 122 Misc.2d 112, 469 N.Y.S.2d 846 (1983); *Beckwith v. City of New York,* 121 A.D. 462, 106 N.Y.S. 175 (1907); *Mansfield Contr. Corp. v. Lindsay,* 41 A.D.2d 925, 344 N.Y.S.2d 976 (N.Y.A.D. 1st Dept. 1973), *aff'd. See also Lynch v. Mayor,* 2 A.D. 213, 37 N.Y.S. 798 (N.Y.A.D. 1st Dept.1896) (proposal by plaintiff and acceptance thereof by commissioner constituted contract binding upon both; it was then too late to reject all bids; plaintiff entitled to judgment for his damages).[8]

AMCA, has incorrectly relied on *Istari Constr., Inc. v. Muscatine,* 330 N.W.2d 798, 800 (Iowa Sup.Ct.1983), to support its contention that Northeast properly rejected all of the bids because the September 10 acceptance was conditional. In *Istari,* approval was a two-step process; after the city council accepted a bid, the Department of Housing and Urban Development (HUD) had to give final contract approval. Thus, HUD authorization was always a condition of any acceptance adopted by the council. Unlike the *Istari* case where approval was twofold, only one level of acceptance from the board of trustees is required in the case at hand.

Plaintiff Northeast also operates on a similar assumption that acceptance was conditional; it contends that since Vanderheyden's bid was accepted subject to meeting bid specifications, the acceptance of September 10, 1991 was conditional. The court disagrees. By saying that the bid was accepted subject to meeting specifications, the board had merely created a loophole, not a condition. The bidding process would be defeated if soliciting entities were permitted to attach catch-all phrases onto low-bid acceptances, as a means of always having a way out. Attempted safeguards such as this do not amount to true conditions. If, for example, the minutes had stated that bid acceptance was contingent upon the execution and approval of a formal contract, then that would have been a true condition. If the board intended only a conditional acceptance, it could have easily included a provision in the minutes requiring execution of a formal contract. What was to prevent the board from inserting a clause in the minutes stating that Northeast would not be bound until a formal written contract has been executed?[9] *See Delta Democrat Publishing Company v. Board of Public Contracts,* 224 Miss. 848, 81 So.2d 715, 717 (1955) ("action of board in awarding contract subject to the furnishing of a bond and contract was a mere step in the procedure of making a public contract. This award was condition-

---

**8.** While the *Lynch* case is also from a foreign jurisdiction, the court is especially persuaded by its holding given its longevity and the close similarity of the case to the instant one. The plaintiff in *Lynch* sought to recover damages resulting from the defendant's refusal to execute a contract whereby the plaintiff was to perform certain work in the construction of a New York City sewer. *See Molloy v. New Rochelle,* 198 N.Y. 402, 409, 92 N.E. 94 (1910). Plaintiff presented a bid for the work pursuant to an advertisement and he was thereafter duly notified that his bid was the lowest and that the contract had been awarded to him. The notice to the plaintiff was given in accordance with the action and determination of the commissioner of street improvements to whom the bids were delivered. Six days thereafter, the commissioner notified the plaintiff that his bid was rejected on account of an irregularity therein. The de-

fendant then refused to execute the formal contract with the plaintiff and an action was brought. The *Lynch* court held that the proposal by the plaintiff and the acceptance by the commissioner constituted a contract binding upon both parties and that it was too late to reject all bids.

**9.** Cases have held that if a resolution or communication of acceptance is conditioned on the later execution of a written contract, then the public entity is in a stronger position to argue the power of revocation is still available until the latter event occurs. J.D. Emerich, Annotation, "Revocation, Prior to Execution of Formal Written Contract, of Vote or Decision of Public Body Awarding Contract to Bidder," 3 ALR 3d 864, 871 (1965).

al.").[10]  Absent such an unequivocal qualification, when the award is made and communicated to the successful bidder, no power remains in the awarding agency to revoke the award, even before a formal contract is executed.  *See* J.D. Emerich, *supra,* at 867.  Had there been a true condition, revocation may have been possible prior to the condition being met.  As it stands, however, no such condition was present under these facts; the board acted to accept the low bid of Vanderheyden; all of the essentials for a contract were present.

Normally an authority's decision is afforded some deference and judicial intervention would be inappropriate merely because the court, "if it were considering the matter ab initio, would have accepted a different bid."  *Canton Farm Equipment, Inc.,* 501 So.2d at 1104.  Such is not the case here.  In this instance, the court's assistance has been directly requested; Northeast, the awarding entity has assigned to the court the task of "declaring who should get the job," at the November 26, 1991 hearing before the court.  The court has obliged.  If the college expected the court merely to "rubber stamp" its actions, then its purpose in coming to court is inconsistent with its request.

The above notwithstanding, judicial intervention is entirely appropriate where the board's action is arbitrary and capricious.  *Canton Farm Equipment, Inc.,* 501 So.2d at 1104 (citations omitted).  While the college asserts that the subsequent rescission was not an arbitrary or capricious act and should, therefore, stand, the court is convinced that Northeast's board of trustees

has acted arbitrarily and capriciously.  The record shows that it was the overriding concern of exposing the college trustees to a lawsuit that prompted the board's rescission of the Vanderheyden award.  When a board of directors recommends acceptance of a bid and thereafter rejects it because of a possible threatened lawsuit or the potential of future legal action by another bidder, then the board has acted arbitrarily and capriciously and rescission is ineffective.  *See Butler v. Federal Way School District No. 210,* 17 Wash.App. 288, 562 P.2d 271, 273 (1977) (board of directors "arbitrarily and capriciously rejected" plaintiff's "low bid because of a possible threatened lawsuit by Foremost Foods", the second lowest bidder; in second round of bids, complaining bidder Foremost Foods became low bidder.).

The court highly doubts that the board would have rescinded its acceptance of Vanderheyden's bid had there been no protest registered by the disgruntled bidder AMCA.  The court believes it would be unwise to lead runners-up in the bidding process to think that a "second bite at the apple" can be finagled by finding a glitch in the winner's bid submission.  AMCA's objection to Vanderheyden's bid because it failed to list certificate of responsibility numbers identifying its intended subcontractors was purely an attempt to win a chance of prevailing in a renewed bidding.  In fairness and equity, the court cannot permit the bidding process as set forth under the laws of Mississippi, MISS.CODE ANN. § 31–7–13 *et seq.* to be abused or undermined in any way.

10.  This case, which was found by the court through its own research, is distinguishable from the case at bar on a number of factors.  First and foremost, the board's acceptance of the *Delta* appellant's low bid was expressly made subject to the appellant executing the contract.  However, appellant was unwilling to enter a contract requiring certain work to be performed by Mississippi labor within Mississippi.  The relevant provision regarding home labor was stricken from the contract by the plaintiff before he executed same.  Upon its return to the board, the contract as changed by appellant was rejected.  After rejecting it, the board directed a re-advertisement for bids.

The court held that when appellant refused to enter into a contract containing the labor specification requirement, the board properly rejected appellant's bid and re-advertised for other bids.  Unlike the appellant in the *Delta* case, defendant Vanderheyden has been a willing player from the onset.  Vanderheyden has never taken issue with or objected to any of Northeast's instructions.  In fact, Northeast has been reassured by Vanderheyden of its complete willingness to perform.  Furthermore, Northeast did not make its acceptance of Vanderheyden's bid subject to execution of a written contract.

The court has examined and compared both bids in both rounds. No evidence has been offered to show that Vanderheyden was not complying with the minority participation instructions. If the board had any reservations about any of the bids, including Vanderheyden's, it could have rejected all of the original bids on September 10, 1991, rather than accept the low bid of Vanderheyden. As it stands, it appears to the court that Northeast waived any irregularities or informalities that could have been the basis of rejecting "any and all bids" once it voted to accept Vanderheyden's low bid. Judging by the recorded minutes of the September 10, 1991 board meeting, there were no serious concerns about the responsiveness of Vanderheyden's bid. If there were, perhaps the board acted too hastily. However, that is not an issue for the court to decide.

Finally, the court will briefly address the estoppel argument advanced by Northeast and AMCA. The doctrine of equitable estoppel should be applied cautiously and only when equity clearly requires it. *Bright v. Michel*, 242 Miss. 738, 137 So.2d 155 (1962). Without delving into any extensive discussions, suffice it to say that in the opinion of the court, Northeast and AMCA both fail to meet all of the elements necessary for the doctrine of equitable estoppel to apply. *See Harris v. American Motorist Ins. Co.*, 240 Miss. 262, 126 So.2d 870 (1961); *Turnipseed v. Hudson*, 50 Miss. 429, 436 (1874); *Izard v. Mikell*, 173 Miss. 770, 163 So. 498, 499 (1935); *PMZ Oil Co. v. Lucroy*, 449 So.2d 201, 206 (Miss.1984); *Covington County v. Page*, 456 So.2d 739, 741 (Miss.1984); *Reliance Mfg. Co. v. Barr*, 245 Miss. 86, 146 So.2d 569 (1962).

For all of the above reasons, the court concludes that the board of trustees properly accepted Vanderheyden's bid on September 10, 1991. The later attempt on September 20, 1991 to rescind same was a nullity. Consequently, the readvertisement for bids and subsequent acceptance of AMCA's bid on October 29, 1991 was inef-

fective. An order in accordance with this memorandum opinion will be entered.