WILLIAM J. TINSTON, Appellant, *v.* CITY OF NEW YORK et al., Respondents.

First Department, November 27, 1962.

*John P. McGrath* of counsel (*Satterlee, Warfield & Stephens,* attorneys), for appellant.

*Leon A. Fischel* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for respondents.

STEUER, J. Plaintiff appeals from an order of Special Term which denied his application for an injunction *pendente lite* and granted defendants' cross motion to dismiss the complaint. We

agree with Special Term that the injunction was properly denied, as trial can be had and the issues completely disposed of before the acts sought to be enjoined are scheduled to be performed.

The action is brought by a taxpayer under section 51 of the General Municipal Law and seeks to enjoin the city, the Board of Estimate, the Board of Elections and the Commissioner of Purchase from implementing a resolution of the Board of Estimate passed July 6, 1962. The resolution empowered the Commissioner of Purchase to carry out a requisition by the Board of Elections for the purchase of 2,750 voting machines at a cost of practically $4,000,000 from the Shoup Voting Machine Corporation (herein Shoup) without public bidding. The complaint alleges that there are several manufacturers of voting machines, including Automatic Voting Machine Division of Rockwell Manufacturing Company (herein Automatic). Nearly 15,000 machines of the latter company are presently in use in the State. It is further alleged that to prevent competitive bidding the Board of Elections created artificial specifications not related to efficient performance of a voting machine because the Shoup machine was the only one which could meet these specifications. The Board of Elections therefore requisitioned the Department of Purchase to buy the machines from Shoup. The requisition was presented to the Board of Estimate by the Commissioner of Purchase without any investigation but with the information that Shoup was the only manufacturer that could meet the specifications and with the suggestion that purchase be made without public letting. Prior to and during the meeting of the Board of Estimate, its members were informed of the above facts in regard to the machines and the manner in which the specifications were drawn. The Board of Estimate received advice from the Corporation Counsel that the Board of Elections had the sole right to designate the kind of machine it desired and that there was no requirement that there be public bidding. The board thereupon passed the resolution in question. The complaint further alleges that Automatic is prepared to bid to furnish machines at a substantially lower figure.

The first objection to the complaint is that the facts alleged do not constitute a cause of action under section 51 of the General Municipal Law, though they might be the basis of an article 78 proceeding. The section allows an action to prevent any illegal official act, or to prevent waste or injury to public funds. However, to maintain the action, corruption or fraud or a total lack of power must be alleged (*Kaskel* v. *Impellitteri,* 306 N. Y. 73). Arbitrary or capricious action is not sufficient. It is true that the complaint uses the words '' arbitrary '' and '' capricious ''

but the mere inclusion of these words does not limit its scope. While there are no allegations of corruption, as there is no allegation that any official seeks to profit personally by the transaction, there are sufficient facts alleged to show a fraud on the city. If the specifications were tailored, as alleged, to allow Shoup and no one else to supply machines, and if this were done for no legitimate purpose and it resulted in unnecessary expense to the city, fraud is alleged even without using the word "fraud" and even though it cannot be alleged that any official will profit by the transaction.

Furthermore, facts are alleged from which a total lack of power can be shown. Under section 343 of the New York City Charter, any purchase involving more than $2,500 can only be made upon public letting on sealed bids, unless the Board of Estimate orders otherwise in a special case. Assuming that the Board of Estimate found this to be a special case, the complaint alleges the basis for this finding, namely, the power of the Board of Elections to make a requisition for machines having the special features called for in the specifications, which power was not subject to question. If the Board of Elections has such power, then the Board of Estimate is limited to the policy decision of whether the city should acquire machines. As public letting under the circumstances would be fruitless, a special case is presented. But if the power is lacking, the narrative of events given in the complaint shows no grounds for a finding of a special case.

Inquiry is therefore directed to just what is the power of the Board of Elections in regard to purchases of equipment. Section 95 of the Election Law provides that where the expenses of a Board of Elections are a charge on any particular city and such city has an agency charged with the making of purchases for such city, all equipment purchased shall be procured for it by the purchasing agency "as if such board were an agency of such city". The expenses of the Board of Elections of the City of New York are a charge upon the city (Election Law, § 93, subd. 4). The question raised is whether these provisions apply to purely formal phases of purchase such as the form of the contract, auditing, or the like, leaving to the Board of Elections complete discretion in the substantive phases. At one time the Board of Elections had independent power to make its own purchases without restriction and the power was sustained against challenge (*Forbes* v. *Cohen*, 254 App. Div. 548). Two years after the decision the present section 95 was enacted. The Governor's bill jacket for the statute (L. 1940, ch. 835) contains correspondence showing that the bill was urged because the prac-

tice of the Board of Elections by the use of improper specifications had sustained a printing monopoly at unnecessarily high cost to the city. There can be no doubt that the bill was enacted to put the Board of Elections in the same category as city agencies with regard to its purchases, and that it was subject to the same restrictions and safeguards as city agencies.

Being so restricted, it could not mandate the Board of Estimate to allow the purchase without competitive bidding. The Board of Estimate, however, can dispense with competitive bidding on its finding that a special case exists, just as it can in regard to any other purchase. A finding of a special case is proper when only one manufacturer or producer is able to supply the product. But the finding of such a situation cannot be made on the Board of Elections' certification that only one manufacturer can meet its specifications, if the specifications are improperly tailored to limit the purchase to one manufacturer. We, of course, do not now decide that the Board of Elections did any such thing, merely that, the complaint so alleging, a cause of action is stated.

But it is claimed that voting machines occupy a position different from other purchases of the Board of Elections. Support for this contention is sought from section 242 of the Election Law which gives the board the power to " adopt for use at any general election any kind of voting machine approved by the secretary of state ". To support defendants' argument, the words " any kind of voting machine " must be meant to signify the machines manufactured by any manufacturer. That is not the sense of the statute. Slight or immaterial variations between machines do not make them different kinds of machines. Whether the difference in method of functioning, particular suitability, accuracy, or the like amounts to a difference in kind is a question of fact.

We conclude that the complaint alleges a purchase without public letting and sufficient facts for a prima facie showing of the absence of a special case. This amounts to a purchase without the power to make it and, as such, constitutes waste. A sufficient cause of action under section 51 of the General Municipal Law is alleged.

The order should be modified to the extent of vacating so much of the order as grants the cross motion to dismiss the complaint and to deny said motion, and otherwise affirmed, without costs.

McNally, J. (dissenting). I dissent and vote to affirm the dismissal of the complaint.

This is a taxpayer's action grounded on section 51 of the General Municipal Law. Such an action must be supported by

allegations of corruption, fraud or illegality and, in addition, waste or public injury. (*Kaskel* v. *Impellitteri,* 306 N. Y. 73; *Western N. Y. Water Co.* v. *City of Buffalo,* 242 N. Y. 202; *Altschul* v. *Ludwig,* 216 N. Y. 459.) In determining the sufficiency of the complaint conclusory allegations as to arbitrary, wrongful and illegal acts unsupported by factual allegations must be disregarded. (*Kalmanash* v. *Smith,* 291 N. Y. 142; *Lifshutz* v. *Adams,* 285 N. Y. 180; *Gerdes* v. *Reynolds Investing Co.,* 281 N. Y. 180; *Knowles* v. *City of New York,* 176 N. Y. 430.)

The complaint alleges Automatic Voting Machine Division of Rockwell Manufacturing Company since 1898 has manufactured voting machines widely used throughout the United States; that many of said machines are used in the State of New York and that the company has recently developed a new voting machine which has been approved by the Secretary of State of the State of New York pursuant to section 242 of the Election Law.

Shoup Voting Machine Corporation also manufactures voting machines. The Shoup machine has vertical arrangements of ballots and front reading counter arrangement, features which differentiate it from all other voting machines.

On June 8, 1961 the Board of Elections of the City of New York submitted to the City Planning Commission a budget request seeking the purchase of 5,500 new multiple voting machines. On November 1, 1961 the City Planning Commission adopted the proposed 1962 capital budget providing for the acquisition of voting machines; said budget was duly adopted by the City Council and certified by the Mayor, the Comptroller and the City Clerk as the capital budget for the calendar year 1962.

On March 7, 1962 the Board of Elections adopted a resolution requiring the purchase of Shoup voting machines. On July 2, 1962 the Board of Elections submitted its requisition to the Department of Purchase for 2,750 voting machines which on the same day forwarded it to the Board of Estimate. On July 6, 1962 the Board of Estimate adopted resolutions appropriating the necessary funds for the purchase of the Shoup voting machines without public letting.

Section 242 of the Election Law vests in the Board of Elections the power to adopt for use at any general election any kind of voting machine approved by the Secretary of State. Section 95 of the Election Law requires the purchase of voting machines to be made through the Department of Purchase of the City of New York. Section 343 of the New York City Charter requires the purchase of equipment involving the expenditure of more than $2,500 to be based on public letting " except that in a special

case the board of estimate by three-fourths vote may order otherwise ".

It was within the power of the Board of Elections to adopt the Shoup voting machine. The complaint does not show that the Shoup voting machine has not been approved by the Secretary of State. The complaint alleges that the vertical and front reading arrangements differentiate the Shoup voting machine from all other voting machines. Consequently, the designation by name is of no material significance. There are no factual allegations to the effect that the specifications for vertical and front reading arrangements are incompatible with the efficient operation of the voting machines. The allegation that Automatic has stated it is prepared to offer a lower price if it is enabled to bid is of no legal effect since it is alleged that the Shoup and Automatic machines are different.

Giving effect to the allegations of fact and the inferences therefrom favorable to the plaintiff, it would appear that the acts of the defendants complained of were within their competence and power and that it is the sole purpose of this action to test the advisability or wisdom of the act of the Board of Elections in adopting the Shoup voting machine. This is not the office of an action under section 51 of the General Municipal Law although it may be the basis for an appropriate proceeding under article 78 of the Civil Practice Act. (*Kaskel* v. *Impellitteri,* 306 N. Y. 73, 79, *supra.*) Further, the adoption of the Shoup voting machine by the Board of Elections enabled by section 242 rendered futile public letting and hence established " a special case " justifying the Board of Estimate to " order otherwise " as provided in section 343 of the New York City Charter.

VALENTE, J. (dissenting). I concur in the opinion of McNALLY, J., that the complaint fails to state a cause of action. But I would affirm the dismissal of the complaint upon another basis as well.

Since the motion to dismiss was made pursuant to subdivision 4 of rule 106 of the Rules of Civil Practice, affidavits may not be considered. (*St. Regis Tribe* v. *State of New York,* 5 N Y 2d 24, 36.) However, the motion was made in conjunction with a motion by plaintiff for a temporary injunction in which voluminous affidavits of all of the facts pertinent to the controversy were submitted. The court is unanimous in affirming the denial of the temporary injunction, albeit for different reasons.

A motion for summary judgment under rule 113 of the Rules of Civil Practice may be made only after an answer is served. Under the new Civil Practice Law and Rules, which become effective on September 1, 1963, subdivision (c) of rule 3211 pro-

vides that where a motion to dismiss a complaint is made on the ground that the pleading fails to state a cause of action, upon the hearing of such a motion either party may submit any evidence that could properly be considered on a motion for summary judgment and the court may treat the motion as a motion for summary judgment. Thus, under the new rules the court could consider the affidavits submitted on the application for a temporary injunction and deem the motion to dismiss to be one for summary judgment.

I would reach the same result which will eventually be permitted by the new rules by deeming that an answer had been interposed here denying the material allegations of the complaint and considering the affidavits on the motion for a temporary injunction as addressed to a motion for summary judgment for a dismissal of the complaint. Since it appears from such affidavits that there is no triable issue of fact and that plaintiff has no cause of action, I would dismiss the complaint on that additional ground.

RABIN, J. P., and EAGER, J., concur with STEUER, J.; VALENTE and McNALLY, JJ., dissent in separate opinions.

Order, entered on August 24, 1962, modified on the law, to the extent of vacating so much of the order as grants the cross motion to dismiss the complaint and to deny said motion, and otherwise affirmed, without costs.