Jack Stanislav, J.
In this article 78 proceeding'the petitioner, Southern Steel Company, Inc., attempts to restrain the County of Suffolk from awarding a contract for certain jail equipment to one other than itself.
The county advertised for bids in December of 1965 on the basis of its stated specifications. Bids were opened January 27, 1966 and petitioner proved to be low bidder. The second low bidder was respondent Herrick-Pacific Corp. All of the bids were rejected and the contract was readvertised, according to the county’s reservation of such right initially, and invitations to bid were sent out. Accompanying these invitations were the county’s specifications, as revised. Somewhat later on an additional revision was made and communicated to the putative *199 bidders, to the effect that each bidder would be required to submit a list of at least two installations by it of individually motorized cell doors in a row of at least 15 cells in actual and satisfactory use under prison conditions. It is this last, revised specification which is the focal point of this proceeding as to intent, effect and consequences.
All doors in prisons or jails can be set up to operate in more than just one way. For example, and to the point here, motorized cell doors can be operated from a central control panel to open and close in unison or individually. The system involving simultaneous operation may or may not be utilized through the use of individual motors for each door despite the fact that those motors do not afford door-by-door control. Southern Steel states that its second bid was based upon this latter method which, according to custom and usage in the trade, is clearly within the meaning of the revised specification referring to individually motorized doors or, more precisely, an electric motor mounted above each cell door. Both the Commissioner of Buildings and Grounds and Herrick emphatically disagree with this equation. They insist, the one on the basis of the common sense meaning of the language employed in the specifications and the other on the basis of actual trade usage, that Southern Steel’s method is not a responsive one. The county’s architect similarly refutes the interpretation as “ incorrect and misleading”. We agree that the logical thrust of the county’s requirements is not so easily capable of being shaped by the exigencies of this proceeding. Accordingly, we are constrained to discard the suggestion that the specifications mean other than what they spell out in this particular.
There is another preliminary problem as to the revised specifications, this in semantics and affecting and bearing upon intent. It was stated that proposals would “ be considered only from competent and reputable manufacturers who have been engaged in the manufacture and installation of prison equipment and locking devices, or both ”. Is the “ or both ” meaningless because the preceding phrases are stated conjunctively? The architect describes the difficulty here as the result of a typographical error, corrected merely by substituting the disjunctive “ or ” before the words locking devices ”. The issue is important because although Southern Steel and another, Decatur Iron & Steel Co., Inc., qualify as both manufacturers and installers, Herrick does not manufacture. We think it more likely that here the wording of the specifications was inadvertently and only grammatically botched. Taking the preceding worc[s into consideration it seems far less probable that *200 two wholly unnecessary words (“or both”) were inserted, especially bearing in mind the extent of the restriction thereby imposed as to the total number of potentially acceptable bidders.
Proceeding, with these basic difficulties somewhat resolved, we find that the bids received in April, 1966 showed Decatur to be low bidder, Southern Steel next low bidder and Herrick third. Then, on May 25,1966, the parties were notified that the contract would be awarded to Herrick notwithstanding its bid exceeding the first two by $40,000 and more. Southern Steel instituted this litigation, followed soon afterwards by Decatur seeking the same relief except that the contract be awarded it as lowest bidder.
Both Decatur and Southern Steel, either categorically insisting or quietly suggesting, alleges that the entire bidding procedure involved, from specifications to rejection of bids to revision to award indicate a studied design on the part of the county to rig the bidding. They rely primarily, to confirm the purported favoritism of Herrick, upon the condition that past installations of individually motorized doors in runs of 15 or more cells be demonstrated by bidders. That requirement, which only Herrick of the three could establish, when taken together with an aborted award to Herrick as second low bidder on the first go-round, is said to confirm the impropriety. Parenthetically, we note that Southern Steel either itself misunderstood the condition or consciously tried to avoid it by supplying references to installations by it which were unresponsive and possibly misleading. Decatur’s references were to specified installations though it could only show runs of less than 15 cells. Herrick’s compliance was complete, but that is just the problem.
Extensive reference is made by the petitioners to Gerzof v. Sweeney (16 N Y 2d 206) and a strong analogy is drawn to the instant situation. It is true that we have here a similar consideration regarding specifications effectively culminating in the elimination of bidders other than the successful one. Beyond that, however, there is much left to be desired. The Gersof case was permeated by an odor so significant that the Court of Appeals felt obliged first, to recite the factual background in great detail and second, to withdraw the specifics of its determination from other superficially like situations. The point was made, and distinctly stressed, that a bid specification could not be phrased so as to exclude all but a single bidder without explanation or justification based upon an overriding public interest. To bring themselves within the Gersof holding petitioners must show that there was only one possibly successful *201 bidder and that its success would be without substantial relationship to the interests of the public.
Enough has been covered up to here to cast a burden on the county and on Herrick to demonstrate, if possible, the nature and extent of the public interest satisfied by the singularly favorable specification alleged. On this score Southern Steel’s claim that the rejection of its original low bid was at best mistaken and at worst conspiratorial, based upon an effort to reach Herrick’s then second low bid, is worthy of consideration and relevant. The county’s exercise of a reserved discretion to reject all bids could reflect its design to revise its standards to favor the supposedly favored bidder as claimed.
After the second opening of bids both petitioners, as the two lowest bidders, were by-passed for their failure to designate existing 15-cell run installations. But a fourth bidder, Van Dorn, did comply although its bid was higher than Herrick’s. As a practical matter then, properly supported competitive bidding was had though both Decatur and Southern Steel were perhaps technically eliminated. The revised experience standard repeatedly characterized as illegally restrictive disqualified only two of a total of four otherwise proper bidders. This would hardly seem enough to categorize the revision as unnecessarily inequitable.
Furthermore and again unlike the Gerzof situation the respondent county has submitted a veritable avalanche of documentary opposition tending to confirm the public interest on this superficially, partially exclusive, specification. There appears to be a reasonable difference of opinion as between the county’s Commissioner of Buildings and Grounds, its architects, and others on the one hand, and petitioners on the other, regarding the efficacy of the two possible cell door operating mechanisms involved. Petitioners in effect argue that a single control for all doors simultaneously is no worse than individually controlled doors. Respondents, of course, urge otherwise. We perceive very little indicating petitioners’ device to be unquestionably superior. The county, on the other hand, points to studies leading it to settle upon an individual door system as a more efficient device for the maintenance of a maximum security operation. There is sufficient justification for the inclusion of the disputed revised specification based upon the county’s considered appreciation of the public interest. (Cf. Gerzof v. Sweeney, 16 N Y 2d 206, supra.)
Clearly, bids may be rejected for their failure to comply literally with specifications (Matter of Rockland Haulage v. Village of Upper Nyack, 13 A D 2d 819). Decatur did not list *202 enough in the way of quantitative experience and Southern Steel really none at all. Their bids might be declined for failure to comply. We are constrained to determine the county’s action to have been neither arbitrary nor capricious and the award proper. Petitioners are not found unqualified, but rather the specifications attacked determined to have been reasonable, proper, competitive and complied with by others and not petitioners. The contract was properly awarded and we may not substitute any other result (Matter of Haskell-Gilroy, Inc. v. Young, 20 Misc 2d 294, affd. 10 A D 2d 629).
The petition and cross petition are dismissed and the applications denied.