Bertram Harnett, J.
This article 78 proceeding is brought by a dissatisfied bidder who lost out on the awarding* of a school bus contract. On June 6, 1972 the Uniondale Board of Education called for and accepted bids for the transportation contract which covered transporting children in the district by bus to its various schools during* the year 1972-1973. The bid deadline was June 19, 1972. Several bus companies submitted bids and on July 18, 1972, the board awarded the contract to Solar Transportation Co., Inc., who was the lowest bidder at $273,145.70, $1,658.30 below the bid submitted by Harran Transportation Co., Inc.
*140 Harran seeks to set aside the award on the basis of three claimed irregularities in Solar’s bid submission and asks that the contract be awarded to itself as the next highest bidder, or in the alternative, the Solar award be set aside and the contract rebid.
Even assuming, arguendo, there were invalid bidding procedures, the court cannot under the circumstances award the contract to' Harran or any other competitive bidder. The actual selection of the appropriate transportation company is a function peculiarly suited to administrative inquiry and discretion and the; court should not easily usurp that role. (See Matter of Diocese of Rochester v. Planning Bd., Town of Brighton, 1 N Y 2d 508, 520; see Matter of Meyer v. Board of Educ., 31 Misc 2d 407; Matter of Caruci v. Dulan, 41 Misc 2d 859.) However, this is not to say that Harran lacks standing to bring this proceeding; the losing bidder for a public contract is in a uniquely close and knowledgeable position to scrutinize and challenge the propriety of bidding procedures. (Matter of Allen v. Eberling, 24 A D 2d 594.) The only issue for consideration, then, is whether the award to Solar should be set aside and a rebidding required.
While in some instances deferral to the administrative process might be appropriate (cf. CPLR 7801, subd. 1; Matter of Rockland Bus Lines v. Board of Educ., 43 Misc 2d 1060) it is clear that the available appeal to the State Commission of Education pursuant to section 310 of the Education Law is not exclusive, particularly in a dispute involving the application and interpretation of a statute, here subdivision 1 of section 103 of the General Municipal Law. (Matter of Buffalo Audio Center Arrolite Co. v. Union Free School Dist., 29 Misc 2d 871, affd. 15 A D 2d 991; Matter of Garber v. Board of Educ., 50 Misc 2d 711.) Moreover, here there is a particular urgency to the claims presented with the school year now almost started. (See Matter of Borders v. Nassau County Dept. of Social Servs., 34 A D 2d 805.) Accordingly, respondents’ affirmative defenses claiming that direct access to the courts, under these circumstances, is barred by the availability of an administrative remedy, are denied and the court will proceed to the merits.
The facts surrounding the bid submissions are not disputed. Solar claims that whatever irregularities occurred were minor and waivable by the board.
The first ground for nullifying the award is that at the time of the bidding Solar did not submit statements by the Transportation Department certifying its rating as a Class I carrier, *141 as required by the board’s published and distributed “ School Bus Transportation Specifications, Form of Proposal and Instructions to Bidders One Year Contract for 1972-1973 ” (hereinafter “ Specifications ”). However, Solar’s certification was obtained and apparently submitted to the board before the award was made and its temporary omission was therefore not critical to the final selection process. (See Matter of Weeks & Sons, 75 N. Y. St. Dept. Rep. 193.)
The second deficiency claimed is that when the bids and award were made, Solar did not have the requisite 25% of its buses equipped with two-way radios as specified in paragraph 8 (Q) of the “ Specifications ”. Yet, neither that paragraph nor any other states that this requirement must be met or established when the award is made and therefore the board did not have to know this information before awarding the contract. Whatever Solar’s equipment deficiencies were in this regard does not undermine the essential regularity of the procedures used.
Harran’s third objection that Solar did not file required current financial data, either at the time of bid submission or before the award, goes to the heart of the process. The attorneys for the board and Solar at oral argument confirmed in open court that these data were not in fact submitted until four or five days after the award was made to Solar.
Financial data on competing bidders are essential and go to the very heart of the award process. Subdivision 1 of section 103 of the General Municipal Law requires that the award of a public contract involving an expenditure of more than $2,500 be made 1 ‘ to the lowest responsible bidder ’ ’. (Italics supplied.) The board, like any other public agency, is under a statutory mandate to ascertain and approve the “ responsibleness ” of the lowest bidder and if not satisfied, to then proceed to the next lowest bidder to again evaluate responsibleness. While the term ‘ ‘ responsible ’ ’ may extend to areas other than finances, such as operational responsibleness, it surely encompasses, as a material element, financial data. Plainly, with a service contract involving considerable equipment and payroll, extending over a year’s time for as critical a service as transporting hundreds of children to school, the assured solvency of the lowest bidder is a critical factor.
The board itself recognized this by specifically requiring each bidder to submit detailed recent financial data concerning its operations. Paragraph 9 of the board’s “Specifications” entitled ‘ ‘ Financial ’ ’ reads:
*142 “ a. Bidder shall submit an operating statement for the calendar year 1970. The Board of Education reserves the right to require supplementary information to assist in determining the qualifications of the bidder.
“ b. Bidder shall submit a balance sheet reflecting his financial status for the accounting period immediately preceding the date of this' bid.
“ c. Bidder shall submit a bank credit reference ”.
While it may be that Solar was lowest in its contract bid, it still must be disqualified for failing to conform to the .required specifications. (Matter of Southern Steel Co. v. County of Suffolk, 51 Misc 2d 198, affd. 29 A D 2d 662.) Here, the board lacked any recent financial information upon which it could determine the endurance, viability and projected reliability of Solar, the factors necessary to know if a bus service contractor is financially “ responsible ”. Whatever data on Solar may have been on file from previous bids could not compensate for the lack of adequate current information. Nor is the claimed failure of Harran to submit the required financial information any reason to overlook Solar’s omission; Solar and not Harran was under scrutiny as the “ lowest responsible bidder ”, and, in any event, all bidders should have submitted this data in order to be realistically considered.
Respondents counter that under paragraph 7 of the ‘ ‘ Specifications ”, the board has authority to consider “informal any bids not prepared and submitted in accordance with [the specifications] ” and “ to waive any informalities ”. While a school board should not be straight-jacketed by inflexible technicalities in the award process, and the cited provision, reasonably read, would seem to confer the requisite discretion needed to avoid undue rigidity, the infusion of informal procedures does not eliminate or substitute for the fundamental ingredients of bidding, corporate financial data being a major one. It is difficult to understand how respondents can characterize financial responsibleness as minor or waivable. Any waiver of this requirement for one bidder gives that bidder a substantial advantage oyer others forced to bare their financial status. The data required are clearly vital and material. (Matter of Gottfried Baking Co. v. Allen, 45 Misc 2d 708.)
The cornerstone safeguards in competitive bidding must not be eroded by ‘1 informalities ’ ’ if public confidence in governmental integrity is to survive. A careful determination of the lowest bidder’s responsibleness is a vital protection to the municipality and the taxpayers whose funds are to be committed *143 in a public contract. (Matter of Warren Bros. Co. v. Craner, 30 A D 2d 437.) Even if it is determined ex post facto by a public body that a bidder in fact qualified as a “ responsible bidder ”, the making of the award initially without that vital information necessarily imports an appearance of impropriety, whatever the merits. And, whatever is the actual relationship of the governmental agency and the successful bidder, it is precisely the appearance of wrong or favoritism that can be so damaging in the public eye. (See Matter of Gottfried Baking Co. v. Allen, 45 Misc 2d 708, supra.) No bidder, particularly one awarded over a quarter of a million dollars in service contracts, should have been in the process exempted from a requirement deemed and publicly declared to be essential and levied on all other bidders by the board.
Accordingly, the award of the transportation contract to Solar is vacated and annulled. If they wish to proceed with the contract, the respondents must initiate and expedite a rebidding for the contract in accordance with their prescribed “ Specifications ”.