OPINION OF THE COURT
Edward J. Greenfield, J.
There are three ways in which a municipality or other governmental arm can secure goods and services: (1) there can be a negotiated contract; (2) there can be a public auction; and (3) there can be sealed bids on agreed upon specifications. Public policy, as enunciated in section 103 of the General Municipal Law dealing with public contracts, clearly makes sealed competitive bidding the norm for public procurement. It provides that except as otherwise provided, all contracts over and above a specified amount are to be awarded to the lowest responsible bidder upon sealed bids. Indeed, anyone who conspires to prevent such com *618 petitive bidding is guilty of a misdemeanor. For the purpose of flexibility the officer or agency letting such bids “may, in his or its discretion, reject all bids and readvertise for new bids”. This, however, does not give carte ^blanche to the public official in charge to reject all bids when the outcome is not to his liking. Unless there is a sound and substantial reason for rejection of any bids, public policy requires that the procedures which are set down be scrupulously adhered to and that contracts be awarded to the lowest responsible bidder.
In this case, petitioner, which was the lowest bidder on sealed bids to supply New York City’s annual requirements for chlorine for treatment of its water supply, contends that its bid was rejected and that the contract was reopened for new bidding by the Department of General Services of the City of New York on an arbitrary and capricious basis.
On March 21, 1980, the respondent issued invitations to suppliers to bid on filling the city’s requirements for chlorine for water treatment on its six systems. The contract would run for the year from July 1, 1980 to June 30, 1981. Petitioner submitted bids for two of the six systems for 3,350, 000 pounds and 3,000,000 pounds of liquid chlorine, respectively. Its bid was $0.1153 per pound, which made it the low bidder when the bids were opened on April 9, 1980.
Since the city’s requirements were to be furnished for over a period of one year and the market price for the goods was subject to fluctuation, the “Special Instructions to Bidders” contained the following paragraph with respect to changes in the prices of materials supplied under the contract. “Reductions and Increases in Prices: Prices of the material listed herein are subject to increase or decrease in the event of increase or decrease in the general or published price as published in the Chemical Marketing Reporter”.
Since the market price of chlorine appeared to be dropping, respondent inquired and petitioner confirmed that in the event of the reduction in either the published price of chlorine or in the cost of chlorine from its supplier, Delta Chemical would decrease its price for chlorine accordingly. On May 30,1980, the president of Delta Chemical informed respondent that since its cost had declined 8% since the *619 submission of its bid, it would decrease its price to the city by 8%. Despite that fact, respondent decided to reject all previously submitted bids and reopened the matter for a second round of bidding. Those bids were opened on June 19, 1980. Delta Chemical did not participate in the rebidding. The lowest prices submitted on the rebidding were higher than Delta Chemical’s original bid.
Respondent takes the position that it has the power under subdivision 1 of section 103 of the General Municipal Law and subdivision b of section 343 of the New York City Charter to reject all bids in its discretion so long as there is a rational and reasonable basis for such a rejection. The ostensible reason offered by the city for the rejection of the initial round of bids was the belief that it could obtain lower bids upon a second round of bidding, and that the provision as to price adjustment upward and downward would have to be clarified. Those conditions are reminiscent of matters involving the respondent which were previously before this court. In Matter of Jet Asphalt Corp. [City of New York] (Supreme Ct, New York County, Index No. 6545/73, Greenfield, J.), this court enjoined the New York City Department of Purchase from awarding a contract to anyone other than the low bidder, and from ordering a second round of bidding for insufficient reasons. A motion to vacate that injunction was unanimously denied by the Appellate Division on April 26,1973. In Matter of Mascali Constr. Co. [Smith], (Supreme Ct, New York County, Index No. 5002/78, Greenfield, J.), this court, again, found that the rejection of bids in the hope that a second round would produce lower prices was arbitrary and capricious and enjoined the opening of the second round of bids, mandating that the contract be awarded to the lowest qualified bidder on the original bidding. What the court said on that occasion is particularly pertinent here. The Commissioner of the Department of General Services had explained that the reason for the rejection of the original bid was to make various changes in the bid proposal, just as was the case here, and to give other prospective bidders a chance to put in their bids the second time around in the hope that the second round would be productive of lower prices. Respondent claimed that its rejection of the initial bids was *620 “in the best interests of the City.” This court held that no agency has unlimited discretion to reject bids at any time it wishes to do so despite the permissive language of the statutes. If the competitive bidding, which is mandatory by statute, is to be a reality, then a rejection of sealed bids cannot be made arbitrarily or capriciously, but must be made in good faith, avoiding the appearance of favoritism or the possibility of the use of discretion for corruption. The hope for lower prices the second time around does not, in and of itself, warrant rejection of the initial bids. Justification for setting aside the original bid exists only if the honesty or validity of the bids is seriously in question — i.e. a possible conspiracy for price-rigging, all bidders not being privy to the same information, or a potential for substantial misunderstanding of the bidding terms or of the specifications.
The entire procedure for sealed competitive bidding is designed to assure the independent judgment of all bidders, uninfluenced by knowledge of what their competitors are doing. If sealed bids are opened, and the prices of the various competitors are then made publicly known, it is to be anticipated that some disappointed bidder, merely by dint of “sharpening his pencil”, will be able to shade the previous low bid once he knows what it is. Such a practice of rejecting the bids in the hope of lower prices puts the question of the rejecting agency’s good faith in sharp focus. The possibilities for abuse are tremendous. (See Gerzof v Sweeney, 16 NY2d 206; American La France Corp. & Foamite Corp. v City of New York, 156 Misc 2, affd 246 App Div 699; Tinston v City of New York, 17 AD2d 311.) The potential for favoritism is apparent. An agency is not empowered to reject a bid and reject it again until the right person or firm gets the award. Public officials, acting in their public capacity, must be quite circumspect in order to assure that there is no taint or breath of suspicion which accompanies their act of rejection.
Public policy has long favored the practice of sealed competitive bidding. The bids are not made known or publicized until the closing date. This is done in order to promote the confidentiality of the process by which bidders arrive at their price decisions without peering over the *621 shoulder of the next man, and making their independent determination based upon their assessment of the market place. As long as the concept of sealed competitive bidding is on the books, it must be given meaning.
While respondent contends that bids can be rejected in the best interests of the city, the best interests of the city are not necessarily reflected in the price of a single bid. A record of honesty and fair dealing with those who do business with the city also redounds to its best interest.. Those who have been dealt with shabbily by the city on previous occasions are likely not to compete (as petitioner chose not to) on subsequent occasions. Fairness is a two-way street. There has to be fairness to the people of the City of New York and equally there has to be fairness to those businessmen who bid for the City of New York’s business.
In Matter of Carucci v Dulan (24 AD2d 529, 530), the court observed: “ Tn exercising.the power to reject any or all bids, and proceeding anew with the awarding of the contract, the officers [of a municipality] cannot act arbitrarily or capriciously, but must observe good faith and accord to all bidders just consideration’ ”. Accord Riester v Town of Fleming (32 AD2d 733) the court stating: “Legislative intent favoring competitive bidding may not be evaded under color of rejection.” In Matter of American Asphalt Distrs. v County of Otsego (40 AD2d 571), the rejection of bids was declared to be arbitrary and capricious and annulled when the purchasing agency gave as its reason for rejection some presumed basis for unfairness which did not affect the bidders and their price quotations.
Is there a reasonable or plausible basis for respondent’s rejection of the original bid? That question must be answered on the basis of the facts which were before it at the time of the challenged decision. The fact that the second round of bidding produces lower prices or higher prices, as was herein the case, is of no moment. Respondent suggests that after the bids were solicited and the prices received and made public, it decided that its long-standing general definitions of “Reductions and Increases, in Prices” needed revision. In other words, after the game had been played and the result arrived at, respondent voided the result on *622 the grounds that the ground rules under which it had been played needed revision. It does not appear to this court that the necessity for such changes of language in the “Special Instructions to Bidders” warrants the rejection of the original bid. The provision as to price adjustment on the first bid indicates that the prices would be adjusted based upon “increase or decrease in the general or published prices.” The revised language .provided for an increase or decrease “in the event of a change in the manufacturer’s quoted price.” The term “general price” had previously been construed as indicating “the price paid by the supplier” and Delta Chemical, as the low bidder, had affirmed in writing that it would make its adjustment in accordance with any reduction of price by its supplier to it. Further, pursuant to the “Instructions to Bidders” the commissioner had the sole power to construe and resolve any dispute as to the meaning of the contract conditions. It explicitly provided “any doubt as to requirements of the contract shall be resolved or corrected in writing by the Commissioner * * * Such resolutions or.corrections by the Commissioner shall be final and conclusive on the seller.” Under the circumstances here presented, there was no necessity for the rejection of all bids in order to provide that there would be price adjustments when there were changes in the prices of the materials from the supplier to the bidder.
The other alleged ground is that there was hope of lower prices on a new bid. This evidently was based upon the letter received after the original bids were opened from an unsuccessful competitor, which intimated that in view of the declining prices a second bid would result in savings to the city. Despite the fact that petitioner’s price was then known, the second bid did not produce a price lower than that of the initial bid. Certainly bids should not be rejected at the instigation of disappointed competitors who promise to do better the next time. “In our view it was an abuse of discretion to reject all bids on the facts that were before the awarding agency. If we permit of a bid rejection based on less than well-established facts and sound judgment, we could be sanctioning the elimination of the lowest responsible bidder by an apparent threat of a third party” (Matter of Cristo, Inc. v State of New York Off. of Gen. Servs., 42 *623 AD2d 481, 483). Such a practice clearly leads to open suspicion of favoritism and encourages the practice of “sharpening the pencil” which can only be harmful in the long run. This court accordingly concludes that the rejection by the respondent of the initial bids for the purchase of chlorine was arbitrary and capricious and will grant the petition to enjoin respondent from awarding any of the chlorine contracts on the basis of the second bid and will direct that it award the contracts on the basis of the original bid subject to any changes or modifications in price as may be warranted by market conditions or the prices of the suppliers.