In the Matter of Tufaro Transit Co., Inc., et al., Respondents, v Board of Education of the City of New York, Respondent, and Varsity Transit, Inc., Appellant.

Second Department, March 11, 1981

APPEARANCES OF COUNSEL

*Shatzkin, Cooper & Rudoff (J. Irwin Shapiro* and *Burton S. Cooper* of counsel), for appellant.

*Leonard M. Simon, P. C. (Peter R. Silverman* of counsel), for respondents.

*Allen G. Schwartz, Corporation Counsel (Steven I. Levin* and *Leonard Koerner* of counsel), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

 The issue presented on this appeal is whether certain contract awards by the board of education (the board) were made in violation of the laws pertaining to competitive bidding. We hold that those laws were violated and, accordingly, we affirm that portion of the judgment at Special Term which annulled the awards in question and directed that they be made to the petitioners.

In the summer of 1979, the board invited bids upon a contract calling in part for the transportation of handicapped children from their homes in Brooklyn to schools located in the same borough (the Brooklyn contract). The specifications required 80 "mini-wagons", each designed to carry 14 or 15 passengers. Potential bidders were advised that they were to bid to supply such vehicles in multiples of 10 and that the board would then accept a number of bids sufficient to reach the required total of 80 vehicles. The bids were solicited upon the understanding that initial acceptances were subject to approval by the Department of Investigation.

On August 1, 1979 the board reached its goal of 80 "mini-wagons" by accepting the bids of the seven lowest bidders. The acceptances were, as indicated, "subject to approval by the Department of Investigation." Petitioners herein were the eighth and ninth lowest bidders for the Brooklyn contract and therefore did not receive the award.

Almost immediately after conditionally accepting the seven bids, the board learned that one of the successful bidders, Archon School Bus Trans. Inc., was ineligible, its prin-

cipals having previously been barred from doing business with the board. Subsequently, another of the successful bidders, Crescent Bus Corp., was found unfit by the Department of Investigation. Consequently, the board withdrew its awards to both Archon and Crescent leaving it 20 vehicles short of the required 80 with some two weeks left before the commencement of the school term. Instead of turning to the petitioners, as the next lowest bidders, to supply the 20 "mini-wagons", the board undertook to obtain the additional service pursuant to article XIII of the contract which provides, in pertinent part:

"XIII. INCREASE OR DECREASE IN
THE NUMBER OF VEHICLES * * *

"B. Increase. If at any time during the period of the Contract, the number of vehicles required for a specific type of service increases, the Board of Education reserves the right to increase the number of vehicles for a specific type of service as follows:

"(i) If the total number of vehicles at the time of the increase is the total number or in excess of the total number of vehicles originally contracted for, the increase shall first be offered to that contractor who quoted the lowest weighted average daily rate per vehicle. Opportunity to furnish such vehicles as the initial offeree cannot furnish may then be offered to the next contractor with the next lowest weighted average daily rate per vehicle. If no contractors providing a specific type of service are found willing to supply additional service of the same type, then the Board may offer the opportunity to provide the additional vehicles to a contractor in any adjacent borough in the manner set forth. The initial offer will be made to that contractor with the lowest weighted average daily rate for that type of vehicle for which none of the successful bidders for that type of service were willing to provide additional vehicles as provided above."

The board claims that, pursuant to the procedure set forth in article XIII, it approached the remaining five successful bidders on the Brooklyn contract to offer them the opportunity to provide the required 20 vehicles. Each in

turn refused. The board then turned to the adjacent Borough of Queens and began offering the opportunity to contractors in that county. Varsity Transit, Inc. (Varsity) was the first offeree to accept. It agreed to provide 20 vehicles at the same weighted average daily rate as it had submitted in its own unsuccessful bid for the Brooklyn contract. Varsity had ranked thirtieth in that bidding, with a weighted average daily rate per vehicle which was more than $31 higher than the petitioners' bids. Nevertheless, the board made the award to Varsity.

On January 16, 1980 the petitioners commenced a proceeding pursuant to CPLR article 78 to annul the award to Varsity and to compel the board to award the contract for the 20 vehicles, 10 each, to the petitioners. Ultimately, Special Term granted the petition in part, *inter alia*, by annulling the award to Varsity and by directing the board to award the contracts for the 20 vehicles to the petitioners upon condition that they be found responsible, and subject to the final resolution of the Crescent Bus Corporation's pending court challenge to its disqualification on the Brooklyn contract. Varsity now appeals from the judgment. Although the board opposed the petition at Special Term, it has filed no appeal from the judgment. Indeed, the board now asserts that it wishes to comply with the direction of Special Term and award the contract for the 20 vehicles to the petitioners. Accordingly, the board asks this court to affirm the judgment.

We first address the issue, raised at Special Term and alluded to on oral argument of this appeal, of whether the petition is barred by the Statute of Limitations. We hold that it is not. The applicable four-month limitation period (see CPLR 217) did not begin to run until such time as petitioners knew or should have known that the board had withdrawn its award to one or both of the disqualified bidders or that it had made an award to Varsity under the Brooklyn contract. (Cf. *Matter of O'Neill v Schechter*, 5 NY2d 548; *Matter of O'Connell v Kern*, 287 NY 297.) There is no evidence in the record to indicate that the "change orders" by which Varsity was requested to provide the 20 vehicles were made public. Instead, it seems that the first public notice of a change in the contract award ap-

peared in the printed minutes of a board meeting at which the board passed a resolution withdrawing the award to Archon School Bus Trans., Inc., one of the disqualified bidders. That meeting was held on September 19, 1979. Significantly, the record does not suggest that the petitioners had actual knowledge of the change prior to that date. Indeed, the petitioners strenuously maintain that they first learned of the change following their own investigation which was prompted by a chance observation made at Varsity's garage on October 25, 1979. It is alleged that on that date the president of one of the petitioners happened to see "mini-wagons" leaving Varsity's garage in numbers far greater than would be called for by the contract items on which Varsity had been the successful bidder. In any event, even assuming that the passage of the board's resolution on September 19, 1979 should have alerted an interested party that a change in awards had been made, the proceeding at bar, commenced January 16, 1980, must be deemed timely.

 Turning next to the merits of the petition, we agree with the petitioners, and with Special Term, that article XIII of the contract is inapplicable to the situation here. By its terms, the article applies only "[i]f at any time during the period of the Contract, the number of vehicles required for a specific type of service increases". The need for the 20 vehicles arose prior to the commencement of "the period of the Contract". (Cf. *Matter of Leeds*, 53 NY 400.) Moreover, "the number of vehicles required" did not increase. It remained at the originally contemplated total of 80. The problem facing the board was that, prior to commencement of performance under the Brooklyn contract, the disqualification of two of the original seven successful bidders had brought about a shortfall in the number of "mini-wagons" available to fill the original contract requirements. We think it clear that a solution should have been found, not by resort to a strained interpretation of an inapplicable contract provision, but through adherence to the principles of competitive bidding. (Cf. *Matter of Fischbach & Moore v New York City Tr. Auth.*, 79 AD2d 14.) Those principles would require the board either to make the contract award for the 20 vehicles to the next lowest responsible bidders or to reject all bids and consider new proposals or rebid the contract if

that were deemed to be in the best interest of the district. (See Education Law, § 305, subd 14, par a; see, also, General Municipal Law, § 103.) As the next lowest bidders, the petitioners therefore enjoyed the right of primary consideration for the award (see *Matter of Fischbach & Moore v New York City Tr. Auth., supra*). They were plainly entitled 'to such consideration vis-à-vis Varsity since, calculated on the basis of a weighted average daily rate per vehicle, their bids were $31.94 and $32.30 lower than the price Varsity was asking. And the petitioners should have received the award since there has never been any suggestion that the board deemed it in its best interest to rebid the Brooklyn contract rather than to award to the petitioners the right to furnish the 20 vehicles.

Moreover, we reject Varsity's attempt to prevent that result by invoking the principle of contract law which holds that an "offer" which is not accepted is "necessarily rejected" *(Poel v Brunswick-Balke-Collender Co. of N.Y.,* 216 NY 310, 319). To apply that principle in the context of this case by equating a "bid" with an "offer" would be to undermine the practice of competitive bidding for public contracts. That practice requires that contract awards go to the lowest *responsible* bidder. The responsibility of a bidder is often determined only after its bid has qualified as the lowest in price. Hence bids are frequently accepted conditionally, subject to a determination of fitness. It would be counterproductive to hold that when such a conditional acceptance is made, all other bids must be deemed forever rejected, for a conditional acceptance contemplates that the agency may turn to the next lowest bidder if the first is found unfit. Moreover, contrary to Varsity's suggestion, if the agency should look to the next lowest bidder under such circumstances, it is ordinarily bound to determine only the bidder's present fitness, provided that all requisite documentation regarding the bidder's responsibility was timely submitted. (Cf. *Matter of Harran Transp. Co. v Board of Educ.,* 71 Misc 2d 139, 142; *Matter of Meyer v Board of Educ.,* 31 Misc 2d 407.) We note that, in the case at bar, there is no challenge to the procedures by which the board has determined the petitioners' present fitness.

Varsity's final contention is that Special Term was

without power to direct the board to make the award to the petitioners. We have held, however, that were an agency's decision to reject all bids is arbitrary and capricious, the courts may intervene and direct the agency to award the contract. (See *Matter of Fischbach & Moore v New York City Tr. Auth., supra;* see, also, *General Elec. Co. v New York City Tr. Auth.,* NYLJ, Sept. 25, 1980, p 15, col 1; *Matter of Delta Chem. Mfg. Co. v Department of Gen. Servs. of City of N. Y., Div. of Municipal Supplies,* 106 Misc 2d 617; cf. *Matter of De Bonis v Hudson Val. Community Coll.,* 55 AD2d 778.) It may well be that a decision by the board here to rebid the Brooklyn contract rather than to award it to the petitioners would be arbitrary and capricious, especially in view of the fact that the price charged by Varsity was substantially in excess of petitioners' bids. We need not reach that question, however, since the board has now expressed the desire to make the award to the petitioners and we see no reason why it may not do so.

Finally, we modify the judgment by deleting the provision making the award to the petitioners subject to the final resolution of the Crescent Bus Corporation's challenge to its disqualification. Should that challenge eventually succeed, the effect on the Brooklyn contract award will be appropriately determined. We deem it desirable now, however, to reach a final award as expeditiously and with as few conditions as circumstances will allow.

MOLLEN, P. J., HOPKINS, TITONE, LAZER and COHALAN, JJ., concur.

Judgment of the Supreme Court, Kings County, dated February 19, 1981, modified, on the law, by deleting the third decretal paragraph. As so modified, judgment affirmed, with $50 costs and disbursements payable by appellant to petitioners.