**SENECA MINERAL CO., INC., Plaintiff,**

v.

**COUNTY OF CHAUTAUQUA; Robert Duff, d/b/a Duff's Environmental Maintenance; Environmental Testing Facilities, Inc.; George W. Riedesel, Individually and as Director of Public Works, Chautauqua County; and John A. Glenzer, Individually and as County Executive, Chautauqua County, Defendants.**

**No. CIV–88–1023C.**

United States District Court,
W.D. New York.

July 9, 1992.

Connors & Vilardo (Randall D. White, of counsel), Buffalo, N.Y., for plaintiff.

Stephen M. Abdella, Co. Atty., County of Chautauqua (Michael J. Sullivan, Deputy Co. Atty., of counsel), Mayville, N.Y., for defendants.

CURTIN, District Judge.

## BACKGROUND

The background of this case has been set forth previously in this court's order of September 11, 1989. Item 21. At that time, the court denied defendants' motions to dismiss and permitted discovery to proceed. Discovery is now complete. Plaintiff has stipulated to the withdrawal of its claims against all defendants except the County of Chautauqua. Items 29, 33, 37. Three causes of action against the county remain: (Count 1) breach of contract, (Count 4) wrongful retention of bid security, and (Count 5) construction costs and purchases. Plaintiff moves for summary judgment on its breach of contract claim. Defendant cross-moves for summary judgment on all of plaintiff's claims.

## FACTS

There are no important facts in dispute. Although the court set out the facts in its prior order, Item 21 at 2–4, the court will briefly reiterate them here. On June 12, 1987, plaintiff submitted its bid to supply liquid calcium chloride road de-icer to the County for the period between August 1, 1987, and July 31, 1989. Plaintiff submitted the low bid of $.089 per gallon for an indefinite supply of de-icer. Item 1, Exh. A. As low bidder, plaintiff thereafter received a letter dated June 15, 1987, headed "Notice of Award," which stated in part:

As a result of the bids received June 12, 1987, ... the award has been made to Seneca Mineral Company, Inc. *pending receipt of the following:*

. . . . .

2) Receipt of specified permits no later than August 15, 1987.

. . . . .

6) A random sampling by a qualified laboratory of typical material to be furnished shall be analyzed as to chemical content. Said test must show that material meets or exceeds specifications.

For items # 5 and # 6 Chautauqua County will contact contractor regarding whom and when we will inspect equipment and sample material.

Item 1, Exh. B (emphasis added). The letter was on a Chautauqua County Department of Public Works ("DPW") letterhead and was signed by C. Roy Christy, Purchasing Agent, DPW. *Id.* The bid specifications stated that the "[b]rine solution shall contain 20% chlorides with not less than *10%* calcium chloride and *10%* sodium chloride per gallon of solution." Item 1, Exh. A (emphasis in original).

In a letter dated July 21, 1987, George Riedesel, Director of the DPW, notified plaintiff that the test results of plaintiff's brine revealed only 167,600 mg/1 of chlorides, 51,000 mg/1 of sodium chloride, and 41,600 mg/1 of calcium chloride, and thus did not meet bid specifications. Item 46, Exh. C.[1] Plaintiff's Secretary/Treasurer, Douglas Painter, replied by letter of July 31, 1987, challenging the "inaccurate data" of the County's test. Subsequently, in a letter dated August 21, 1987, Mr. Painter filed with the County a test analysis of plaintiff's brine done by Microbac Laboratories on or about July 15, 1987. Item 12, Riedesel affidavit, App. E. This analysis corresponded closely with the County's test. It revealed a solution containing 50,-550 mg/1 of calcium chloride and 49,000 mg/1 of sodium chloride. *Id.* No overall calculation of chlorides was provided. *Id.* Microbac's analysis went further, however, and supplied percentages, by weight, of calcium and sodium chloride in plaintiff's brine. These percentages were 11.39% for calcium chloride and 10.12% for sodium chloride. Plaintiff argued in its August 21 letter that Microbac's test demonstrated compliance with the County's bid specifications. *Id.*

Prior to the filing of plaintiff's test analysis, Director Riedesel notified plaintiff, on August 18, 1987, that

Chautauqua County hereby rejects your bid for Liquid Calcium Road De-Icer (S–22–87 PWTH) for failure to comply with technical specifications and failure to submit required New York State Department of Environmental Conservation [("DEC")] permits.

Item 46, Exh. G. The next day, August 19, 1987, the DPW notified the next lowest bidder, Robert A. Duff, d/b/a Duff's Environmental Maintenance ("Duff's"), that "the award has been denied to Seneca Mineral Company, Inc. and made to Duff's Environmental Maintenance...." Item 44, Exh. F. This award was also conditioned on receipt of several items. The County did not include a request for a waste hauler permit, but this was because, as the then-current contractor for the County, Duff's had already placed such permits on file.

---

1. In his affidavit, Mr. Riedesel translated these mg/1 calculations into percentage-of-solution figures apparently by moving the decimal point. *See* Item 45 (Riedesel affidavit). Plaintiff argues that this translation was improper, and has filed the affidavit of Carl Hultman, Ph.D. in Physical Chemistry, in support of that claim. Item 49, Exh. A. The court takes no position on this dispute.

## DISCUSSION

■ The question in this case is whether a contract was ever formed between plaintiff and the County. Plaintiff admitted during oral argument that a disappointed bidder on a public contract has no cause of action for breach of contract. *E.g., Molloy v. City of New Rochelle*, 198 N.Y. 402, 408–09, 92 N.E. 94 (1910); *Stride Contracting Corp. v. Board of Contract & Supply of the City of Yonkers*, 181 A.D.2d 876, 581 N.Y.S.2d 446, 448 (1992); *Verblaw Motor Truck Sales, Inc. v. Town of Olean*, 105 A.D.2d 1073, 482 N.Y.S.2d 381, 382 (1984); *Marine Elec. Ry. Prod. Div. v. New York City Transit Auth.*, 17 B.R. 845, 854–55 (Bankr.E.D.N.Y.1982); *Allen v. Eberling*, 24 A.D.2d 594, 262 N.Y.S.2d 121, 123 (1965); *Carroll–Ratner Corp. v. City Manager of New Rochelle*, 54 Misc.2d 625, 283 N.Y.S.2d 218, 222–23 (Sup.Ct.1967), *aff'd*, 36 A.D.2d 795, 320 N.Y.S.2d 715 (1971). The reason behind this rule is twofold: first, statutes that call for awards to go to the lowest responsible bidder are enacted for the benefit of the public, not rejected bidders; and, second, an unaccepted bid is not a contract and can sustain no cause of action for its breach. *Id.* 283 N.Y.S.2d at 222. The proper proceeding, therefore, is under Article 78. *Woods Advertising, Inc. v. Koch*, 178 A.D.2d 155, 577 N.Y.S.2d 22, 22–23 (1991); *Allen v. Eberling*, 262 N.Y.S.2d at 122–23; *DiBerardino's, Inc. v. Rome Consol. Sch. Dist.*, 134 Misc.2d 288, 510 N.Y.S.2d 791, 791–92 (Sup. Ct.1986); *Carroll–Ratner Corp.*, 283 N.Y.S.2d at 222–23. Plaintiff has clearly exceeded the four-month statute of limitations for bringing such an action. *See* N.Y.C.P.L.R. § 217 (McKinney 1990). Accordingly, for plaintiff to proceed upon its breach of contract theory, it must prove that a contract was formed with the County.

■ Plaintiff argues that a contract was formed at the time the County issued its June 15, 1987, letter, entitled "Notice of Award." In support of this contention, plaintiff relies almost entirely on this court's prior opinion, Item 21 at 8–9, in which the court declined at that time to dismiss the complaint. The court stated:

> There is authority, however, for plaintiff's proposition that once a bid has been accepted, "a binding contract between the bidder and the awarding agency is established." *Lord Electric Co. v. Litke* [122 Misc.2d 112], 469 N.Y.S.2d 846, 848 (Sup.Ct.1983) (citing *Lynch v. Mayor* [2 A.D. 213], 37 N.Y.S. [ ]798 (1st Dept. 1896); other citations omitted); *Roosevelt & Cross, Inc. v. County of Albany* [72 A.D.2d 855], 421 N.Y.S.2d 682, 683 (3rd Dept.1979).

Item 21 at 8. That order was issued prior to discovery. Furthermore, at that stage of the case, it was not clear "whether the County's basis for rejecting the plaintiff's bid was reasonable." *Id.*

■ Upon further review of the law and the facts of this case, the court concludes that no contract was formed between plaintiff and the County. In competitive bidding on public contracts, New York law "requires that contract awards go to the lowest *responsible* bidder." *Tufaro Transit Co. v. Board of Educ. of the City of New York*, 79 A.D.2d 376, 436 N.Y.S.2d 886, 889 (1981) (emphasis in original). *See also Molloy*, 198 N.Y. at 406, 92 N.E. 94. " 'The mere arithmetical operation of ascertaining which bid is the lowest does not constitute an award.' " *Id.* at 408, 92 N.E. 94 (quoting *Erving v. Mayor*, 131 N.Y. 133, 138, 29 N.E. 1101 (1892)). Thus, once Chautauqua County discovered upon opening the bids that plaintiff's bid was lowest, it still needed to determine whether plaintiff was a responsible bidder. Accordingly, it was entitled to condition its granting of an award on plaintiff's satisfaction of certain prerequisites necessary to meet the bid specifications.

> The responsibility of a bidder is often determined only after its bid has qualified as the lowest in price. Hence bids are frequently accepted conditionally, subject to a determination of fitness. It would be counterproductive to hold that when such a conditional acceptance is made, all other bids must be deemed forever rejected, for a conditional acceptance contemplates that the agency may

turn to the next lowest bidder if the first is found unfit.

*Tufaro Transit Co.*, 436 N.Y.S.2d at 889. *Accord Dick Fischer Dev. No. 2, Inc. v. Department of Admin., State of Alaska*, 778 P.2d 1153, 1155 (Alaska 1989) ("Acceptance [of a bid] is incomplete if the requirements of a condition precedent or of a condition subsequent are not fulfilled.").

The cases cited by this court in its earlier order—*Lord Electric Co. v. Litke*, 469 N.Y.S.2d at 848; *Lynch v. Mayor*, 37 N.Y.S. at 799; and *Roosevelt & Cross, Inc. v. County of Albany*, 421 N.Y.S.2d at 683—each involved an unconditional award. Once the award was made, a contract was formed. In *Tufaro Transit, Inc.*, however, the governmental body initially accepted the lowest bids "subject to" an investigation. *Tufaro Transit, Inc.*, 436 N.Y.S.2d at 887. After an investigation, two bidders were properly rejected. *Id.* No contract had been formed with those parties. *See Molloy*, 198 N.Y. at 409, 92 N.E. 94; *Dick Fischer Dev. No. 2*, 778 P.2d at 1155.

In this case, six conditions were listed in the "Notice of Award" letter sent to plaintiffs on June 15, 1987. Item 1, Exh. B. The letter stated clearly: "[T]he award has been made to Seneca Mineral Company, Inc. *pending receipt of the following....*" *Id.* (emphasis added). It then listed the conditions. There is no dispute that plaintiff satisfied four of these conditions. There is also no dispute that defendant rejected plaintiff's bid after deciding that plaintiff failed to (1) obtain DEC permits and (2) meet technical specifications for its brine. Item 46, Exh. G (August 18, 1987, rejection letter).

In deciding to reject plaintiff's bid, "[t]he governmental agency has the right to determine whether a variance from bid specifications is material or whether to waive it as a mere irregularity, and that determination must be upheld by the courts if supported by any rational basis." *Varsity Transit, Inc. v. Board of Educ. of the City of New York*, 130 A.D.2d 581, 515 N.Y.S.2d 520, 521, *appeal denied*, 70 N.Y.2d 605, 519 N.Y.S.2d 1029, 513 N.E.2d 1309 (1987). *See also 400 East 54th Street Garage*

*Corp. v. Green*, 179 A.D.2d 452, 578 N.Y.S.2d 190, 191 (1992); *In re C.K. Rehner, Inc.*, 106 A.D.2d 268, 483 N.Y.S.2d 1, 2 (1984); *William A. Gross Constr. Assoc. v. Gotbaum*, 150 Misc.2d 478, 568 N.Y.S.2d 847, 849 (Sup.Ct.1991). Thus, the court must evaluate whether the County's decision to reject plaintiff's bid for failure to (1) obtain DEC permits and (2) meet technical specifications, was "irrational, dishonest or otherwise unlawful." *Id.*

Plaintiff argues that it met defendant's second condition: "Receipt of specified permits no later than August 15, 1987." Item 1, Exh. B. The only permit at issue under this requirement was a waste hauler permit issued by DEC. Plaintiff argues, first, that it did not need this permit; second, that it was informed on July 15, 1987, by George Riedesel, Director of the DPW, that it did not need this permit; and third, that it could meet this requirement by hiring a licensed hauler. None of these arguments has merit.

The parties agree at this point that the DEC did not require a contractor hauling *non-waste* brine to obtain a waste hauler permit. *See* Item 13 at 7; Item 44, Exh. F (December 8, 1987, letter from Robert Wozniak, DEC). The parties also agree that such a permit *was* required to haul and/or dispose of *waste* brine. *See id.* Thus, plaintiff did not need a waste hauler permit to haul the non-waste brine that it intended to supply from its wells to the County's brine tanks.

In addition to supplying brine to the County, however, plaintiff was also required, pursuant to the bid specifications, to supply environmental control for the County's brine tanks "at no additional charge to the County...." Item 1, Exh. A at 2. This environmental control included cleanup of spills, the cleaning of tanks, and the disposal of any residue of waste brine in such tanks. *Id.* The previous supplier for the County—Duff's—had used waste brine. The County believed that some of that waste brine may have remained in its tanks during the summer and fall of 1987. Thus, it was completely logical for the County to require those companies bidding

in 1987 to obtain a waste hauler permit from DEC in order to be able to clean up waste brine as part of their environmental control duties under the 1987 contract. This conclusion is underscored by a letter dated August 27, 1987, by Robert Wozniak, Solid Waste Specialist II at DEC, in which he informed the County that "[a]ny movement of brine that is presently in the Chautauqua County storage tanks would have to be done by a permitted hauler." Item 46, Exh. J. Consequently, defendant's bid specifications unequivocally required bidders to obtain a waste hauler permit. Item 1, Exh. A at 2. Plaintiff did not obtain this permit. Accordingly, defendant's decision to reject plaintiff's bid for non-compliance with this condition was not irrational. *Varsity Transit*, 515 N.Y.S.2d at 521; *In re C.K. Rehner, Inc.*, 483 N.Y.S.2d at 2; *Gotbaum*, 568 N.Y.S.2d at 849. *See also LeCesse Bros. Contracting, Inc. v. Town Bd. of Town of Williamson*, 62 A.D.2d 28, 403 N.Y.S.2d 950, 952 (1978), *aff'd*, 46 N.Y.2d 960, 415 N.Y.S.2d 413, 388 N.E.2d 737 (1979) ("the rule is that a municipality may decline bids which fail to comply with the literal requirements of the bid specifications"); *Southern Steel Co. v. County of Suffolk*, 51 Misc.2d 198, 273 N.Y.S.2d 99, 103 (Sup.Ct.1966), *aff'd*, 29 A.D.2d 662, 286 N.Y.S.2d 204 (1968) ("Clearly, bids may be rejected for their failure to comply literally with specifications.").

Plaintiff cannot escape this conclusion by arguing that the permit requirement was waived by Mr. Riedesel in a meeting with Douglas Painter on July 15, 1987. Based on the affidavits and deposition testimony submitted to the court, there is no support for plaintiff's contention that Mr. Riedesel told plaintiff that no permit was required. Rather, it is apparent that Mr. Riedesel took the position that plaintiff should check with the DEC. *See* Item 44, Exh. B at 83, 171 (Riedesel deposition). Plaintiff then argues that Robert Wozniak at the DEC informed it that no permit was required, but this allegation is refuted by Mr. Wozniak's August 27, 1987, letter referred to above. In that letter, Mr. Wozniak clearly states that any movement of brine then in Chautauqua County's tanks would have to be done by a permitted hauler. Item 46, Exh. J.

Similarly, plaintiff may not escape the County's requirement by suggesting that it could have hired a licensed hauler to dispose of waste brine. Contrary to plaintiff's assertions, the bid documents do not waive the strict requirement that "[v]endor shall provide within 30 days from notification of award, all permits required for hauling and storage by: ... NYS DEC—Waste Hauler plus Additive Permit." Item 1, Exh. A at 2. The bid documents only state that "[a]ll emergency [environmental control] requests will be honored by the Contractor immediately, if not, *the County may hire an outside contractor at the vendor's expense.*" *Id.* (emphasis added). This clause offers no help to plaintiff.

For this reason alone, the court concludes that the County acted rationally in deciding to reject plaintiff's bid. *See Verblaw Motor Truck Sales*, 482 N.Y.S.2d at 381–82. At least one court has gone further and held that even where a bidder was rejected unreasonably, its proper remedy was under Article 78 and not breach of contract. *Woods Advertising, Inc. v. Koch*, 577 N.Y.S.2d at 22–23. *See also DiBerardino's, Inc. v. Rome Consol. Sch. Dist.*, 510 N.Y.S.2d at 791–92 (since bidding process is a "quasi-judicial governmental function," and decision whether to award a bid is a discretionary act of the responsible official, the only way to review such decisions is by way of an Article 78 proceeding). Having arrived at this conclusion, the court need not reach the second ground given by the County in rejecting plaintiff's bid, *viz.*, that plaintiff's brine failed to meet the County's bid specifications.

Once the bid was rejected, as stated above, the "plaintiff, therefore, d[id] not sustain a contractual relation with the defendant and cannot sustain this action as upon contract." *Molloy*, 198 N.Y. at 408–09, 92 N.E. 94. Accordingly, defendant's motion for summary judgment on plaintiff's breach of contract claim is granted, and that claim is dismissed.

This order does not dispose of plaintiff's fourth and fifth causes of action, however.

242

The parties shall write the court forthwith informing it of the status of these claims.

So ordered.